**CHICAGO GREAT WESTERN RY. CO. v. PEELER.**

**No. 12730.**

Circuit Court of Appeals, Eighth Circuit.

March 1, 1944.

Rehearing Denied March 22, 1944.

Harry S. Stearns, of St. Paul, Minn. (Harry S. Stearns, Jr., of St. Paul, Minn., on the brief), for appellant.

Ernest A. Michel, of Minneapolis, Minn. (Tom Davis and Carl L. Yaeger, both of Minneapolis, Minn., on the brief), for appellee.

Before STONE, THOMAS, and JOHNSEN, Circuit Judges.

THOMAS, Circuit Judge.

The appellee as plaintiff brought this action against the appellant to recover damages for personal injuries sustained in an accident while employed by appellant as a switchman in appellant's yards at Des Moines, Iowa. The action was brought under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq.

After stating jurisdictional facts the complaint alleged that the injury for which recovery of damages was sought resulted from the negligence of the appellant in allowing a portion of a plank at a street crossing to protrude above the surface of the ground and over which appellee tripped and fell against a moving locomotive while in the performance of his duties. The answer denied negligence and alleged contributory negligence and assumption of risk. It is admitted that both appellant and appellee were engaged in interstate transportation and commerce at the time the accident occurred. The jury returned a verdict in favor of the appellee for $40,000 upon which the judgment appealed from was entered.

Reversal is sought on the grounds (1) that there was no substantial evidence of negligence or proximate cause; (2) that the court erred in refusing to allow defendant's offer of proof that plaintiff was at the time of the trial receiving a pension under the Railroad Retirement Act of 1937, 45 U.S.C.A. § 228a et seq.; and (3) that the court erred in refusing to instruct the jury that plaintiff assumed the risk.

The question of the sufficiency of the evidence to support a finding of negligence is presented here on a record which shows a motion for a directed verdict at the conclusion of the evidence and its denial by the trial court. In determining this question, since the jury found for the plaintiff, we are bound to resolve all conflicts in the evidence against the defendant, and the plaintiff is entitled to the benefit of such favorable inferences as the jury might reasonably have drawn therefrom. Gunning v. Cooley, 281 U.S. 90, 50 S.Ct. 231, 74 L.Ed. 720; Chicago, St. P., M. & O. Ry. Co. v. Muldowney, 8 Cir., 130 F. 2d 971, 973. Applying this rule, the evidence discloses that Peeler, on the date of the accident, February 25, 1942, while employed as a switchman by the defendant, was engaged in assisting in the movement of cars in the Des Moines yards. The accident occurred at about 11:15 a. m. at a crossing known as the Diagonal Street crossing. The street at that point runs approximately north and south, and the railroad tracks cross it from east to west. The purpose of the operation was to transfer six freight cars coupled to the front of a locomotive from a point on the load track about 1600 feet west of the crossing to the stock track, the junction of the two tracks being about 20 feet west of the crossing. Peeler's duty was to throw the stock track switch at the junction point of the two tracks after the train had moved eastward past the switch to permit the train then to move westward on the stock track.

On the morning of the accident the crossing over the tracks was icy and slippery. A ditch had been constructed under the tracks at the switch for the purpose of draining the switch. The crossing was maintained by the appellant and consisted of planks three or four inches thick resting on top of the ties and covered with earth, sand, or cinders. At the west side of the crossing the end of one of the planks protruded above the level of the ground about 2½ or 3 inches. At such crossings it was customary to bevel the end of the plank or to cover it with earth

or cinders. The condition described had existed a long time, although it could easily have been remedied.

Peeler was riding in the cab of the locomotive with the engineer and fireman as it backed up moving in an easterly direction pulling the six cars. The train was moving four or five miles an hour. Peeler testified that as the locomotive approached the switch he stood in the gangway on the bottom step with his back to the outside, waited until he crossed the ditch at the switch and the rough ties there and got off at the smoothest place available about four or five feet from the crossing. He then took a "couple of steps" and tripped on the end of the protruding plank, was thrown on the crossing on the ice, slipped and fell into the side of the engine, and received serious injuries which are unnecessary to describe.

The court charged the jury that under the Federal Employers' Liability Act it was the duty of appellant to provide a reasonably safe place for the plaintiff to perform his duties as a switchman, and limited the basis of recovery to the alleged negligent failure to bevel or fill around the end of the plank on which plaintiff tripped.

Section 1 of the Act, 45 U.S.C.A. § 51, makes the railroad liable to its employees for injuries "resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its * * * track, roadbed, works * * * or other equipment." Under this section there is no liability in the absence of negligence on the part of the railroad. New York Central R. R. Co. v. Winfield, 244 U.S. 147, 150, 37 S.Ct. 546, 61 L.Ed. 1045, L.R.A.1918C, 439, Ann.Cas.1917D, 1139.

The section foreman testified that his duty was to maintain the tracks at the point of the accident and that the plank on which Peeler tripped had been in place for a long time; that he beveled the ends of planks at some of the crossings in Des Moines but not at that particular crossing; and that the purpose of beveling the ends of the crossing planks is to protect anything dragging under the locomotive so that it would not tear the plank out. Another witness testified that it was the general pracice to bevel the ends of planks at all crossings in railroad yards; that

the particular plank on which Peeler tripped had been sticking up for at least a month before the accident. It was also shown that switchmen in the performance of their duties were required to dismount from moving freight trains and walk along the tracks beside moving trains at this point.

■ Upon this evidence the jury was warranted in finding that the protruding end of the plank was a defect in appellant's "works"; that such defect was due to appellant's negligence; and that Peeler's injury resulted from such negligence. Compare Thomson v. Boles, 8 Cir., 123 F.2d 487, certiorari denied 315 U.S. 804, 62 S.Ct. 632, 86 L.Ed. 1204; McCarthy v. Palmer, 2 Cir., 113 P.2d 721; Lock v. Chicago, B. & Q. R. Co., 281 Mo. 532, 219 S.W. 919.

■ Appellant contends that it owed no duty to Peeler to remedy the defect in the end of the plank on which he tripped because such defect did not interfere with the operation of trains, citing Nelson v. Southern Ry. Co., 246 U.S. 253, 38 S.Ct. 233, 62 L.Ed. 699; Missouri Pac. R. R. Co. v. Aeby, 275 U.S. 426, 48 S.Ct. 177, 72 L.Ed. 351, and other cases. The cases are not in point. A defect which hinders a switchman in the performance of his duties does "impair safety in operation." In the Nelson case, supra, the plaintiff was a civil engineer makng a survey in the yards at the time he was injured by a defect in a tie. In the Aeby case the plaintiff, a station agent, was injured by stepping on ice recently formed in a depression on the platform. The Court observed that plaintiff knew that it had rained and the place was covered with ice and snow; that her knowledge of the danger was equal to that of the company; and that she voluntarily took the risk of known conditions. Under these circumstances the court held that the carrier was not negligent. The case was decided before the adoption of the amendment of 1939 to the Federal Employers' Liability Act (hereinafter discussed) abolishing assumption of risk as a defense in cases brought under that Act, and the decision is clearly predicated upon that doctrine. The decision is not controlling in this case.

■ Again, the appellant argues that it owed no duty to Peeler to maintain the crossing because its duty in that regard ex-

tended solely to the public. The argument has no application to the issue. Peeler's action is not based upon any alleged defect in the crossing, but upon failure to bevel or cover the end of the plank. Under the state law the company's duty to the public to maintain the crossing is different and distinct from its duty under the Act to a switchman.

■ Appellant argues further that the verdict is based, not on evidence, but upon speculation and conjecture. This contention is based in part upon the testimony of the engineer that Peeler got off the locomotive in the middle of the crossing. This testimony was directly contrary to the testimony of Peeler, which the jury was at liberty to believe. Illinois Central R. Co. v. Skaggs, 240 U.S. 66, 68, 36 S.Ct. 249, 60 L.Ed. 528. The evidence is abundantly sufficient to support the finding that appellant's negligence was the proximate cause of Peeler's injury.

The appellant's second contention is that the court erred in rejecting its offer of proof that "the plaintiff has since his accident in this case received a pension from the railroad retirement board;· that one-half of that pension was paid for by the railroad company and one-half by the plaintiff himself." The offer was objected to on the ground that it was "incompetent, irrelevant and immaterial, not involving any issue in this case." The objection was sustained.

The Railroad Retirement Act of 1937, 45 U.S.C.A. § 228a et seq., provides that certain described employees "shall * * * be eligible for annuities after they shall have ceased to render compensated service to any person."

Section 55 of the Employers' Liability Act, supra, provides:

" * * * That in any action brought against any such common carrier under or by virtue of any of the provisions of this chapter, such common carrier may set off therein any sum it has contributed or paid to insurance, relief benefit, or indemnity that may have been paid to the injured employee * * * on account of the injury * * * for which said action was brought."

"Section 58. Nothing in this chapter shall be held to limit the duty or liability of common carriers or to impair the rights of their employees under any other Act or Acts of Congress."

■■ The question presented is interesting. It has been discussed by the courts in McCarthy v. Palmer, 2 Cir., 113 F.2d 721, 723, and in Hetrick v. Reading Co., D.C.N.J., 39 F.Supp. 22. Neither case is helpful here. In the McCarthy case the question arose on an appeal from a finding of the court as a result of a stipulation, and in the Hetrick case on a motion to strike an affirmative claim for a set-off under the Act. In the present case no claim to a set-off is asserted in the answer. The objection, therefore, that the offered evidence was not material or relevant to any issue was properly sustained. Rules 8(c) and 13 of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, provide that affirmative defenses and counterclaims must be pleaded, and Rule 12(h) provides that "A party waives all defenses * * * which he does not present either by motion * * * or * * * in his answer or reply", with certain exceptions not material here. No demonstration is necessary to show that a set-off is a partial or entire defense to an action for damages.

■ Appellant contends that it was entitled to make proof of the pension on cross examination of the plaintiff in mitigation of damages. If appellant is entitled to any benefit in this action from its contributions to the Railroad Retirement fund it is by way of set-off only, as provided in the statute. Without the aid of the statute an employer can not set up in mitigation of damages in a tort action by an injured employee indemnity from a collateral source, such as insurance or compensation or benefits under a Workmen's Compensation Act, even where the defendant has contributed to the fund. Overland Const. Co. v. Sydnor, 6 Cir., 70 F.2d 338, 340; Liggett & Myers Tobacco Co. v. De Parcq, 8 Cir., 66 F.2d 678, 687, 688; 25 C.J.S., Damages, § 99. We are not called upon, therefore, to decide whether a pension under the Railroad Retirement Act is a proper set-off to the plaintiff's claim, or whether it is excluded under § 58, supra, of the Federal Employers' Liability Act. The objection to the offered proof was properly sustained in any event for the reason that the claim for set-off was not in issue.

■ Finally, the appellant complains that the court erred in refusing to instruct the jury that if the plaintiff assumed the risk he cannot recover.

Section 4 of the Federal Employers' Liability Act, 45 U.S.C.A. § 54, reads:

"That in any action brought against any common carrier under or by virtue of any of the provisions of this chapter to recover damages for injuries to, or the death of, any of its employees, such employee shall not be held to have assumed the risks of his employment in any case *where such injury or death resulted in whole or in part from the negligence of any of the officers, agents, or employees of such carrier; and no employee shall be held to have assumed the risks of his employment in any case* where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee." (Italics supplied.)

The italicized words were added to the section by the Amendment of August 11, 1939. Prior to the adoption of this amendment the courts generally accepted and applied the doctrine of assumption of risk to cases arising under the Act, except "in any case where the violation by such common carrier of any [Federal] statute enacted for the safety of employees' contributed to the injury or death of such employee", such as the Safety Appliance Acts. Seaboard Air Line v. Horton, 233 U.S. 492, 502, 503, 34 S.Ct. 635, 639, 58 L.Ed. 1062, L.R.A.1915C, 1, Ann.Cas.1915 B, 475. In Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54, 64, 63 S.Ct. 444, 450, 143 A.L.R. 967, the Supreme Court said: "The result [of the 1939 amendment] is an Act which requires cases tried under the Federal Act to be handled as though no doctrine of assumption of risk had ever existed."

It is contended that the rule thus announced in the Tiller case has been modified, if not overruled, in the case of Owens v. Union Pacific R. Co., 319 U.S. 715, 63 S.Ct. 1271, 1275, 87 L.Ed. 1683. In this case the accident occurred before the adoption of the 1939 amendment and the suit was brought after its adoption. The language of the opinion in the Owens case relied upon by appellant reads: "What re-mained of the defense [of assumption of risk], therefore, narrows the inquiry to whether Owens can be shown to have anticipated and decided to chance the particular risk here created by the negligence of his fellow employees." The argument assumes that the Court meant what remained of the defense after the adoption of the 1939 amendment. That this is an erroneous view of the meaning of the language of the Court is shown by the further statement in the opinion that " * * * in view of our conclusion on assumption of risk, we have no occasion to determine whether the 1939 amendment to the Federal Employers' Liability Act, abolishing that defense, operates where the accident occurred before its enactment but suit is brought after." Again, the Court in the Owens case referred to the Tiller case without overruling it, saying: "Recently this Court reviewed [in the Tiller case] 'the maze of law which Congress swept into the discard,' when in 1939 it amended the Employers' Liability Act to abolish the defense of assumption of risk." And see the statement of Mr. Justice Roberts in his dissenting opinion in Mahnich v. Southern S. S. Co., 64 S.Ct. 455, 463, 88 L.Ed. ——, decided January 31, 1944, a case arising under the maritime law, in which he said, " * * * it has always been held that a fellow servant's negligence is no defense in actions brought under the Federal Employers' Liability Act [citing Illinois C. R. Co. v. Skaggs, 240 U.S. 66, 36 S.Ct. 249, 60 L.Ed. 528], whereas assumption of other risks was a defense [Seaboard Air Line R. Co. v. Horton, 233 U.S. 492, 34 S.Ct. 635, 58 L.Ed. 1062, L.R.A.1915C, 1, Ann. Cas.1915B, 475] until Congress recently explicitly acted to abolish it as such [Act of Aug. 11, 1939, 45 U.S.C.A. § 51]."

Until the Supreme Court overrules the Tiller case, the construction placed upon the 1939 amendment in that case is binding upon this court as well as upon the district court. Under these circumstances it can not be said that the trial court erred in refusing the requested instruction on assumption of risk.

Affirmed.