## MOSBY v. TEXAS & P. RY. CO.

### No. 4416.

Court of Civil Appeals of Texas. El Paso.

March 1, 1945.

Rehearing Denied April 19, 1945.

Abner S. Lipscomb and W. C. Peticolas, both of El Paso, for appellant.

Roy D. Jackson and Burges, Burges, Scott, Rasberry & Hulse, all of El Paso, for appellee.

SUTTON, Justice.

This appeal is from the District Court of Hudspeth County.

The appellant was plaintiff below and the parties will be designated as in the trial court. The plaintiff sued the defendant to recover for personal injuries under the Federal Employers' Liability Act, 45 U.S. C.A. § 51 et seq. The trial was to the court and jury. On a favorable verdict, judgment was rendered for the defendant, from which the plaintiff has appealed.

Plaintiff alleged four specific grounds of negligence, to-wit: Failure to properly

inspect the railroad track to determine if it were in a reasonably safe and usable condition; failure to properly maintain the track in a reasonably safe and usable condition and in permitting it to become defective; in running the freight train at an excessive rate of speed, sixty miles per hour, and in running an excessively heavy freight train over the track. In the alternative, he pleaded the defendant was guilty of some negligent acts unknown to him but known to the defendant and that the roadbed, tracks, engine, cars, etc. were all under the immediate control of the defendant.

The defendant answered with a general denial; specific denials; that the accident in which plaintiff received his claimed injuries was a derailment of three cars and a caboose, which resulted from a broken rail, and the rail broke as a result of a transverse fissure not discoverable, but a latent defect for which the defendant is not liable, and contributory negligence.

No questions arise on the pleadings.

The plaintiff has five points of error, in substance, that the trial court erred in permitting, over objection, defendant's counsel to examine plaintiff with respect to a pension or annuity he is receiving under the Railroad Retirement Act and in permitting counsel to argue same to the jury; one other ground of error on claimed improper argument, and a complaint with respect to the charge. Each will more fully appear hereinafter.

The defendant has appropriate counterpoints, the first three of which are based on propositions it was entitled to an instructed verdict and, if the complaints of plaintiff are well taken, they are nevertheless harmless. We shall consider this phase of the case first.

The undisputed facts are that plaintiff was the conductor on freight train No. 69 west bound for El Paso on February 8, 1941; that three box cars and the caboose in which plaintiff was riding derailed and turned over near mile post 749 about three miles west of Allamore in Hudspeth County; that the derailment resulted from a broken rail.

Plaintiff testified he passed over the track where the derailment occurred on a freight train around midnight of February 4, 1941, and in the vicinity of mile post 749 he felt a bad place in the track; that the caboose went down on one side indicating a low place; that he made a note of it and threw it off with his train register as he passed through Sierra Blanca, the first station he passed west. He testified further on his return trip on February the 6th, he felt the same bad place in the track at the same place. On his arrival at Van Horn, the first station to the east, he saw Mr. J. L. Moore, the District Road Master, and told him he had previously reported a bad place in the track and repeated the same report to him. On his return trip from Toyah to El Paso near midnight of the 7th of February 1941, the derailment occurred at or near mile post 749.

The Agent at Sierra Blanca testified he got no report of a bad place in the track from Mr. Mosby. Mr. Moore, the District Road Master, testified he received no report from the plaintiff and that he was over the track where the derailment occurred on February 6th, and noticed no bad place.

The rail broke near its west end in two places and a piece approximately two feet in length came out. Mr. Moore and the General Road Master, L. R. Stevens, testified they each went to the scene of the accident and examined the wreck and the broken rail. They each testified the break resulted from a transverse fissure, commonly known as a crystallization of the metal, which starts in the center of the ball of the rail (the top of the rail) and cannot be seen from the outside. Each of these witnesses testified the rail broke first nearest its west end. Mr. Moore said the first break was between two ties and that the ties are laid about twelve inches apart from center to center. Mr. Stevens testified the first break had about a ten per cent fissure, that is, it extended ten per cent of the total diameter of the ball of the rail. The second break had about a twenty-five per cent fissure. Mr. Moore's testimony is the larger fissure was near the west end of the rail.

Witnesses for the defendant testified there is in use a mechanical device known as the Sperry Rail Detector owned by the Sperry Company that will detect rail fissures; and that it takes such fissures a long time to develop. The defendant had used these cars or detectors. The General Road Master testified they used it about twice a year and it had been over the section where the derailment occurred October 30, 1940. Mr. Roney, out of the Engineer's Office in Dallas, testified the Sperry car was available to the defendant

about once a year and it would detect rail fissures.

This is the substance of all the testimony touching the derailment and the cause thereof. The defendant takes the position there is no proof of negligence on the part of the defendant in any particular alleged by plaintiff and on the contrary the undisputed evidence is the break and consequent derailment occurred as the result of a latent defect, the transverse fissure.

We are unable to say under the facts here reasonable minds could and would not differ as to the cause of the accident and the conclusion reached by the defendant and contended for is the inevitable one. The plaintiff testified there was a bad or low place in the track at or near mile post 749 which he twice reported. These reports are not admitted but there was no examination of this section of the track between the dates of the claimed reports and the accident, except the District Road Master rode over it. There is no testimony as to what extent fissures develop before breaks occur under ordinary and usual use. The testimony of Mr. Stevens is the rail broke first where there was a ten per cent fissure and the second break occurred afterwards with a twenty-five per cent fissure. Mr. Moore testified to the reverse, as heretofore indicated. The conclusion is justified that much of the train passed over the first break before the second occurred and derailed the three cars and caboose. A jury might, we think, reasonably conclude there was a bad or low place where the first break occurred, or where they both occurred, which condition caused the break at the particular time; whereas, under ordinary conditions and state of repair, the rail would not have broken from either the ten per cent or twenty-five per cent fissure.

Plaintiff counters this contention with the proposition he was entitled to a submission of his case to the jury in all events under his alternative plea by virtue of the rule of res ipsa loquitur. The alternative pleading is exactly like that found in Texas & Pacific R. Co. v. Cassaday, Tex.Civ. App., 148 S.W.2d 471 (Dismissed for Want of Merit). We have not deemed it necessary to undertake to pass on the sufficiency of the evidence to raise the issue and do not, therefore, pass on the proposition.

The defendant makes the further contention it was entitled to an instructed verdict, because the plaintiff introduced and read in evidence "Defendant's Reply to Plaintiff's Request for Admissions," in which it is stated:

"That as set out in defendant's answer filed herein on or about November 12, 1942, plaintiff at the time of said accident was the conductor on the freight train involved in said accident; that three freight cars and a caboose were derailed due to the breaking of a rail, which resulted from a fissure in the rail, no part of which fissure extended to the outer portion of the rail, and which fissure was not discoverable by defendant, it being a latent, unseeable defect."

The defendant insists plaintiff is bound by the statement and cannot deny the accident occurred other than as the result of the latent defect.

Under Rule 169, Texas Rules of Civil Procedure, plaintiff filed a request for admissions numbered 1 to 6, inclusive, wherein he sought admissions (1) that the particular train involved was derailed and wrecked on February 8, 1941 about three miles west of Allamore; (2) that plaintiff was the conductor thereon; (3) that the train was moving in interstate commerce; (4) *"that said derailment was caused by a rail on Defendant's track breaking in two places";* (italics ours); (5) that the train was running sixty miles per hour, and (6) under the American Experience Tables a man of sixty would have an expectancy of 14.10 years. The defendant did not undertake to answer each item as numbered but answered first as above indicated and continued:

"Defendant says that said accident occurred on February 8, 1941, about three miles west of Allamore, Texas; that said train was running about sixty miles per hour, and was moving in interstate commerce.

"That said rail broke in two places, at both of which places there were fissures as above described.

"Defendant has not examined the American Experience Table of Mortality, and it is not a matter connected with its business, and it neither denies nor affirms the statement in paragraph (6) of plaintiff's request, but demands strict proof thereof."

It will be observed items (2) and (4) were answered in the first unnumbered paragraph of defendant's reply, and to (4)

58

is tied the reasons for the break, embodying largely defendant's defenses to the suit; and that items (1), (5), and (3) are answered in the second paragraph of the reply, and in the order here indicated.

Among the purposes of the pre-trial procedure, of which Rule 169 is a part, is the shortening and simplification of the final trial of the case and not a complication thereof. The request was for the admission "of the truth of the relevant matters of fact set forth by the request." If the rule be extended and held to embrace the surplusage, unresponsive, and voluntary explanations and statements of the adverse party and hold him who seeks the admissions bound thereby, the rule is at once rendered altogether useless and worthless. The purpose is to obviate in advance of the trial proof of obviously undisputed facts, and holds out no hope for the admission of the very heart of a case. The fact sought to be admitted was the derailment was caused by a broken rail in two places. That from the record is obviously undisputed. The cause of the break was not called for. We are not prepared to set up a construction of the rule that will render it unworkable and useless. The volunteered explanation was an answer to be made by the jury, and we hold the plaintiff is not bound thereby.

This brings us to a consideration of the complaints of the plaintiff. The first, and we think the serious ones, go to the examination of plaintiff by defendant's counsel concerning his retirement pension or annuity and counsel's argument thereon. The examination is as follows:

"Q. As a railroad employee, you regularly put up, together with funds from other sources, money for pensioning railroad employees when they reach a certain age and have a certain amount of years of seniority, and become disabled, by accident or injury, or whatever the cause may be? Objection. A. Yes.

"Q. And you have been allowed, effective as of November 1941, the full railroad pension? A. No, sir, I didn't get the full pension.

"Q. Well, the full annuity. 'Pension' is not the right word for that, but the full annuity? Objection.

"Q. And you will, as long as you live, receive that in lieu of wages in part at least? A. I don't know whether you would call it wages or not."

We have not set out the objections in full but the interrogatories and answers only.

The argument based on the above testimony is as follows:

"The plaintiff has had a full annuity since November 1941 from the Railroad Retirement Board and the Texas Pacific Railway Company pays one-half of his annuity."

This argument was objected to and exception reserved.

There is no off-set claimed by the defendant, nor pleading of any sort that the defendant has contributed anything to plaintiff's retirement annuity. Neither is there any proof the defendant "pays one-half of his annuity," or any other sum; hence, as said in Chicago Great Western R. Co. v. Peeler, 8 Cir., 140 F.2d 865, we are not called upon here to determine whether or not any contribution that might have been made by the defendant may properly be set-off under the Federal statute because it is not an issue. There has been some diversity of opinion in the states as to whether compensation or wages received from a collateral source may be proved and deducted in mitigation of damages for loss of time but in this state it has been consistently held such deduction may not be made. Missouri Pacific R. Co. v. Jarrard, 65 Tex. 560; Houston Belt & Terminal R. Co. v. Johansen, Tex.Civ.App., 143 S.W. 1186, affirmed 107 Tex. 336, 179 S.W. 853; St. Louis & S. F. R. Co. v. Clifford, Tex.Civ. App., 148 S.W. 1163, writ refused. As we understand it, the Federal statutes, supra, levy a tax equally against the employee and the employer for the benefit of the retirement fund. When the plaintiff ceased his work with the defendant, they each ceased to contribute directly on his account and the defendant thereafter made a contribution directly on account of his successor. The benefits plaintiff received after the termination of his employment, so far as the defendant's contributions are concerned, are altogether indirect. The retirement fund is administered by the Retirement Board, a Federal Executive Agency. We regard the source of this annuity as purely collateral, and it was probably for this reason the Court in the Chicago Great Western R. Co. v. Peeler, supra [140 F.2d 868] (a case as nearly like the instant one as could well be found) said:

"If appellant is entitled to any benefit in this action from its contributions to the Railroad Retirement fund it is by way of set-off only, as provided in the statute. Without the aid of the statute an employer can not set up in mitigation of damages in a tort action by an injured employee indemnity from a collateral source, such as insurance or compensation or benefits under a Workmen's Compensation Act, even where the defendant has contributed to the fund."

The Court cites 25 C.J.S., Damages, § 99, pages 648, 649, wherein it is said, compensation received from Workmen's Compensation, Federal Vocational Rehabilitation Act, Federal Employers' Compensation Act, or out of a pension fund may not be deducted in mitigation of the damages. We think the Peeler case, supra, directly in point and by virtue of the several authorities cited, the testimony introduced, and the argument of counsel was inadmissible and prejudicial for which a reversal must be directed.

Plaintiff complains of alleged improper argument by defendant's counsel, but in view of another trial, it is not likely that argument would again occur and we deem it unnecessary to pass upon that issue.

Since we have concluded the case must be reversed and remanded, we deem it advisable to dispose of the complaint against the charge. The case was submitted on special issues and following the usual definitions given in a case of this character, the court further instructed the jury as follows:

"A railway company is not to be regarded as an insurer of the safety of its employees, but it is compelled to use ordinary care in providing reasonably safe and proper equipment, appliances and places where their employees can follow their vocation."

The complaint is this constitutes a general charge. There is no question but that it is a general charge, but under Rule 277, Rules of Civil Procedure, the mere fact that it is a general charge does not constitute it reversible error. The rule authorizes the giving of a general instruction or charge in a special issue case where necessary to enable the jury to properly pass upon and render a verdict on the issues. Plaintiff suggests this instruction is not necessary. We think that apparent. He further suggests injury will be presumed. He does not suggest any probable injury,

and we are unable to discover any. As we understand the case of Boaz v. White's Auto Stores, 141 Tex. 366, 172 S.W.2d 481, at page 484 (7, 8), to constitute the instruction reversible error, it must appear that it is unnecessary and is calculated to prejudice one of the parties before the jury. We think the charge might have properly been eliminated on the objection of the defendant. It is thought unnecessary to determine whether the error was reversible or harmless. On another trial the question will not likely arise.

For the reasons heretofore indicated, the judgment of the trial court will be reversed and the cause remanded for another trial.