Robert G. DAY, Sr., Appellant,

v.

Weldon McFARLAND et al., Appellees.

No. 575.

Court of Civil Appeals of Texas, Tyler.

Dec. 9, 1971.

Rehearing Denied Jan. 6, 1972.

Jackson, Walker, Winstead, Cantwell & Miller, Ralph E. Hartman, Jack Pew, Jr., Dallas, for appellant.

Spruiell, Lowry, Potter, Lasater & Guinn, Wilbert Lasater, Tyler, for appellees.

MOORE, Justice.

This is a wrongful death action arising out of an intersection collision. Appellees, Weldon McFarland, as community administrator of the estate of Kathryn Anne McFarland and as next friend of his two minor children, brought this suit against appellant, Robert G. Day, Sr., and his minor son, Robert G. Day, Jr., for damages arising out of an automobile collision between Robert G. Day, Jr. and Kathryn Anne McFarland, the wife and mother of appellees respectively. The collision occurred at the intersection of Loop 323 and Paluxy Drive in the City of Tyler, Smith County, Texas.

Trial was before a jury. In response to the special issues, the jury found Robert G. Day, Jr. guilty of negligence proximately causing the collision in (1) driving his autombile in excess of the legal speed limit of 45 m. p. h., and (2) failing to apply his brakes. Numerous special issues were submitted to the jury inquiring as to the contributory negligence of the deceased, Kathryn Anne McFarland. The material contributory negligence issues, as numbered in the court's charge, are as follows: (7) whether the deceased, Kathryn Anne McFarland, failed to keep a proper lookout, (10) whether she was guilty of negligence in driving her automobile into the path of the Day vehicle, (15) whether she failed to yield the right-of-way to the Day vehicle, and (18) whether she failed to make a proper application of her brakes. The jury answered each of the foregoing contributory negligence issues in the negative.

The trial court rendered judgment on the verdict awarding appellees damages in the amount of $154,798.50. After his motion was overruled, appellant, Robert G. Day, Sr., duly perfected this appeal. We affirm the judgment of the trial court.

Appellant does not challenge the findings establishing negligence on the part of Robert G. Day, Jr.

By the first four points of error appellant urges that the trial court erred in refusing to grant his motion for new trial on the ground that the jury's negative findings to Special Issues Nos. 7, 10, 15 and 18 exonerating the deceased from any act of contributory negligence, were so against the overwhelming weight and preponderance of the evidence as to be manifestly wrong and unjust. In this connection appellant states in his brief that: " * * * we will not ask the Court * * * to find contributory negligence 'as a matter

of law.' We do ask, however, that this Court exercise its authority to review the factual sufficiency of the evidence to support these findings." Under these points we are required to review all evidence in the record.

The collision in question occurred at approximately 11:50 a. m. on May 26, 1969, at the intersection of Loop 323 and Paluxy Drive. Paluxy Drive runs north and south and Loop 323 runs east and west. There are two east bound lanes of traffic and two west bound lanes of traffic on Loop 323. There is also a parking lane on each side of Loop 323 which is 15 feet in width, lying next to the curb. At the point where Paluxy Drive intersects the loop, there is a stop sign on Paluxy Drive approximately 15 feet back from the curb. There was also a white stop line painted on the street about even with the curb line along the loop. The record shows that Loop 323 is heavily traveled. The record further shows that the pavement was dry and the visibility was not restricted on account of the weather.

Robert G. Day, Jr., who was 16 years of age at the time of the accident, was a student at Robert E. Lee High School. The high school was located on Loop 323 approximately 2½ miles west of Paluxy Drive. Shortly before the collision, Robert and two fellow students, Ricky Kinsey and Tommy Sukiennik, left the school in a 1969 Oldsmobile 442 owned by Robert G. Day, Sr. After leaving the school they traveled east on Loop 323 on their way to a bowling alley situated on the loop east of Paluxy Drive, to have lunch.

The speed limit on the loop, at this point, was 45 m. p. h. Appellant admits that the evidence would justify a finding that, before reaching Paluxy Drive, Robert attained a speed of 70 m. p. h. Other evidence in the record shows that he may have been traveling at the rate of as much as 100 m. p. h. Tommy and Ricky, his two passengers, testified, however, that Robert started to slow down as they approached Paluxy Drive because there is usually a policeman at the Dairy Queen which is just east of Paluxy. Immediately before the collision Robert was traveling in the inside lane next to the parking lane.

The record shows that immediately before the collision Mrs. McFarland was traveling north on Paluxy. As she approached the intersection, she stopped at the stop sign or at most slowed her automobile to such a degree that it was practically stopped. The evidence shows that the view of a motorist driving north on Paluxy and approaching the loop is somewhat obstructed on the left by trees and bushes until the motorist reaches a point near the stop sign. At this point the view becomes better as one proceeds toward the stop line. From the stop line a person could see approximately two-tenths of a mile to the west in the direction of the Day automobile. The only obstruction was several telephone poles situated near the south side of the loop. Tommy Sukiennik, a passenger in the Day automobile, testified that when the Day automobile was about 100 yards from the intersection, he saw Mrs. McFarland come into the intersection from Paluxy and gradually roll into the lane occupied by the Day car. He testified that the first time he saw her, she was already past the stop line, past the parking lane, and approximately 3 feet in the right-hand driving lane in the direction in which they were going. He further testified that immediately prior to the impact Mrs. McFarland appeared to have her head turned to the right, away from the Day automobile. This testimony constitutes the only direct evidence as to whether deceased maintained a proper lookout, since neither Robert Day, Jr. nor Ricky Kinsey, the other passenger, were able to remember anything about how the accident occurred. He further testified that Day moved to his left in an apparent effort to go in front of her, but the collision occurred at about the center stripe which divides the two east bound lanes on the south side of the loop. The point of impact was the middle of Mrs. McFarland's automobile. According to his testimony, the McFarland

automobile appeared to be making a slight turn to the left. The impact propelled the McFarland automobile approximately 80 feet east of the intersection and Mrs. McFarland was apparently killed instantly.

Tommy Crouch, also a student at the high school, testified that shortly before the collision he was proceeding east on the loop and that Robert passed him immediately before the collision. He testified that he did not see the McFarland automobile at the stop sign; that the first time he saw it it was rolling past the stop sign at a speed of approximately 4 m. p. h.; and that Mrs. McFarland appeared to have made a normal acceleration of her speed to about 20 or 25 m. p. h. at the time of the collision. According to his testimony, the Day vehicle was approximately 125 feet from the intersection when Mrs. McFarland attempted to cross.

Ralph Byrd, a Highway Patrolman, and a witness for appellees, testified that sometime after the collision he made some tests at the scene of the collision for the purpose of determining how long it would take a driver, driving the type of automobile that the deceased was driving, under the same circumstances, to drive from a stopped position at the stop sign to the point of the impact. He testified that the distance between these two points was 44 feet. He testified that after stopping at the stop sign and without looking in either direction and by proceeding at an ordinary rate of speed to the point of impact, required a time of 5.4 seconds and that the time required between the two points after making a quick glance to the left and right was 7.8 seconds. He testified that in making the experiment he stopped at the stop sign on Paluxy and looking to his left to the west, the farthest distance a person could see was between 643 feet and 853 feet, and that somewhere between these distances the loop curved so that an automobile would not be visible to one stopped at the stop sign. According to his calculations, when and if Mrs. McFarland stopped at the stop sign and glanced quickly to the left and to the right before entering the intersection, the Day vehicle would have been at least 803 feet away from the intersection if traveling at the rate of 70 m. p. h. and would have been 920 feet away if traveling at 80 m. p. h. Accordingly, he calculated that if the Day automobile was traveling at the rate of 70 m. p. h., it must have traveled a distance of 803 feet while Mrs. McFarland was traveling 44 feet to the place of impact, and if traveling at the rate of 80 m. p. h., the Day automobile must have traveled 920 feet while Mrs. McFarland was traveling 44 feet.

■ In view of appellant's points challenging the factual sufficiency of the evidence, this court, in the exercise of its peculiar powers under the Constitution and the Texas Rules of Civil Procedure, Nos. 451, 453, and 455, has the duty to consider and weigh all of the evidence in the case and to set aside the verdict and remand the case for a new trial, if we conclude that the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust and wrong, regardless of whether the record contains some evidence of probative force in support of the verdict. This proposition has become so well settled that citation of authority is unnecessary.

■ By returning a negative answer to Special Issues Nos. 7, 10, 15 and 18, the jury declared that they were not convinced, by a preponderance of the evidence, that Mrs. McFarland was guilty of contributory negligence. Our task is to determine whether this finding is so against the evidence as to be wrong and unjust. In this connection we recognize that decedent was under a duty not only to look, but to use due care in observing the speed and proximity of other traffic approaching from either direction. Although she was not required to anticipate negligent or unlawful conduct on the part of others, she was not entitled to close her eyes to that which would have been observed by a person of ordinary prudence similarly situated. De

Winne v. Allen, 154 Tex. 316, 277 S.W.2d 95; Lynch v. Ricketts, 158 Tex. 487, 314 S.W.2d 273. It is presumed, however, that the injured person was in the exercise of due care for his own safety when the accident occurred. Such presumption may be overcome by either direct or circumstantial evidence, but the burden is upon the defendant, seeking to escape liability for his own negligent conduct or acts, to both plead and prove the defense of contributory negligence. It is also the rule that contributory negligence is not established by evidence which is equally consistent with the exercise of care by plaintiff, or where the inference of due care is just as reasonable as is the inference of the absence thereof. Jordan v. City of Lubbock, Tex.Civ.App., 88 S.W.2d 560; Salter v. Galveston, H. & S. A. Ry. Co., Tex.Civ.App., 285 S.W. 1112; Dewhurst v. South Texas Rendering Co., Tex.Civ. App., 232 S.W.2d 135; MacDonald v. Skinner, 347 S.W.2d 950, 955 (Tex.Civ.App., El Paso, 1961). The only direct evidence in the record tending to indicate that she may not have kept a proper lookout is to be found in the testimony of Tommy Sukiennik, wherein he testified that immediately before the impact, Mrs. McFarland appeared to have her head turned in the opposite direction. As we view the situation, this testimony is not of sufficient probative force to prove a breach of duty in failing to keep a proper lookout. At this particular point in time, the collision was clearly imminent. Certainly the duty to keep a proper lookout would not require a lookout that would be useless. It is but natural, we think, that an ordinarily prudent person would, by instinct, turn from a situation where serious injury or death was imminent. The only other evidence showing that she may have failed to keep a proper lookout arises out of the circumstance that the collision occurred. It is well settled that contributory negligence will not be presumed from the mere fact of a collision. Texas & Pac. Ry. Co. v. Day, 145 Tex. 277, 197 S.W.2d 332. Nor does the fact that the motorist's view was unobstructed compel the conclusion that there was a failure to keep a proper lookout. There is no evidence of probative force that the deceased did not look to her left or that she failed to maintain a lookout for traffic approaching the intersection from the west. There is no presumption that the deceased was negligent. The burden was appellant's to prove that decedent failed to keep a proper lookout either by direct evidence or by facts from which such negligence can be inferred. The most probable explanation of the matter is that decedent misjudged the distance or speed of the Day vehicle or both. It is common knowledge that mistakes with reference thereto frequently occur. Such mistakes of judgment fall far short of establishing want of ordinary care. Boaz v. White's Auto Stores, 141 Tex. 366, 172 S.W.2d 481. After weighing all of the evidence, we are not prepared to hold that the jury's negative answer to Special Issue No. 7 is against the great weight and preponderance of the evidence.

As to the negative findings on the right-of-way issue, the jury evidently concluded that an ordinarily prudent person, situated in the position of deceased, after carefully observing the speed and proximity of the Day automobile, would not have entertained a belief that there was not sufficient time to cross in front of it safely. Under the law she was not obligated to remain stopped until the highway was perfectly clear of all approaching traffic. She did, however, have the duty to look for other traffic and to observe the speed and proximity of the approaching vehicles. But where proximity of another vehicle is such that it gives the appearance of safety, as it probably did here, she had a right to proceed. In view of the tremendous rate of speed of the Day automobile and its distance from the intersection, we are of the opinion that an ordinarily prudent person, situated as she was, would have concluded that there was sufficient time to cross the intersection with safety. In other words, the situation was such that

the jury could have concluded that the mind of an ordinarily prudent person would not have comprehended the fact that the Day vehicle was traveling at such a rate of speed that it could have covered 800 to 900 feet in the short period of time that she would be unable to travel approximately 55 feet across the intersection. Based on this premise, there is nothing in the record to compel the conclusion that any necessity existed to yield the right-of-way or apply the brakes. There is no evidence to the contrary. After a careful consideration of all the evidence in the record, both that in favor of the jury's findings and that against the findings, we are not persuaded that the jury's findings on the contributory negligence issues are so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and unjust. Appellant's points 1 through 4 are overruled.

By the fifth point of error, appellant urges that the trial court erred in refusing him a new trial because of the prejudicial error in submitting the following instruction as a part of the court's charge:

"Under the law, every motorist is entitled to assume that other motorists will drive in a prudent and legal manner, until it becomes apparent to a person of ordinary prudence that this assumption is incorrect."

The appellant objected to the instruction on the grounds that the instruction was " * * * unnecessary, that it constitutes a comment on the evidence, that it is a general charge and that it is improper and should not be given because it is an attempt to instruct the Jury as to matters of law * * *." The complaint here is confined solely to the contributory negligence issues. Appellant argues that the instruction was a material factor in causing the jury to conclude that Mrs. McFarland did not fail to keep a proper lookout; that she was not negligent in driving her automobile in the path of the Day vehicle; and that she did not fail to yield the right-of-way. He con-

tends that the instruction was a "comment on the case as a whole and was reasonably calculated to cause and probably did cause prejudicial harm."

Rule 277, Texas Rules of Civil Procedure reads in part:

" * * * In submitting special issues the court shall submit such explanatory instructions and such definitions of legal terms as shall be necessary to enable the jury to properly pass upon and render a verdict on such issues, and in such instances the charge shall not be subject to the objection that it is a general charge. * * *"

 As we view the record, the instruction is probably subject to the objection that it constitutes a general charge upon the law and should not have been submitted in this fashion. But the mere fact that it constitutes a general charge does not constitute reversible error since Rule 277 permits the giving of a general instruction under certain circumstances. Mosby v. Texas & P. Ry. Co., 191 S.W.2d 55 (Tex.Civ.App., El Paso, 1945, n. w. h.). The ultimate question is whether the error, if any, in giving the instruction resulted in prejudice to appellant. Under Rule 434, Texas Rules of Civil Procedure, we are not authorized to reverse a judgment on the ground that the trial court committed error, unless the error complained of amounts to such a denial of the rights of the appellant that it was reasonably calculated to cause and probably did cause the rendition of an improper judgment. In determining whether the giving of the instruction resulted in harm to appellant, we must look to the record as a whole. Texas Power & Light Co. v. Hering, 224 S.W.2d 191 (Tex.Sup., 1949).

At the outset it is to be noted that appellant failed to object to the instruction on the ground that it constituted an incorrect statement of the law. Any such complaint was therefore waived. Allen v. American National Insurance Company, 380 S.W.2d

604 (Tex.Sup., 1964); Houston-American Finance Corporation, 343 S.W.2d 323 (Tex. Civ.App., Dallas, 1960, ref., n. r. e.); Safeway Stores Incorporated v. Bozeman, 394 S.W.2d 532 (Tex.Civ.App., Tyler, 1965, ref., n. r. e.).

In the case of Buchanan v. Lang, 247 S. W.2d 445, 448 (Tex.Civ.App., Waco, 1952, writ ref., n. r. e.), the court stated:

"* * * Furthermore, in the exercise of ordinary care to keep a proper lookout for his own safety before entering or proceeding through the intersection, plaintiff was not necessarily required to foresee that Buchanan or any other person would approach the intersection at an excessive and dangerous rate of speed or that such person would not slacken his speed before reaching or entering the intersection. Jimmie Guest Motor Co. v. Olcott, Tex.Civ.App., 26 S.W.2d 373 (er.dis.); Schuhmacher Co. v. Bahn, Tex.Civ.App., 78 S.W.2d 205 (er.dis.); Roddy v. Herren, Tex. Civ.App., 125 S.W.2d 1057."

The duty imposed upon a person approaching and entering an intersection is stated in 60A C.J.S. Motor Vehicles sec. 361 thusly:

"At a street or highway intersection, unless the circumstances apprise him to the contrary, the driver of a motor vehicle is not required to anticipate violation of the law or the rules of the road by others, but rather may assume that others will comply therewith and exercise due care; but the right to rely on the care of others does not relieve him of the duty of exercising care himself."

Appellant does not contend that the evidence shows decedent failed to keep a proper lookout as a matter of law. The contention is that the instruction caused the jury to answer the issue in the negative. Appellant argues that the instruction had the effect of relieving decedent of her duty to use due care in observing the Day vehicle and its speed. Under the authorities

previously cited, it must be presumed that Mrs. McFarland exercised ordinary care until appellant discharged the burden of overcoming such presumption by competent evidence. The question must be approached from the viewpoint of deceased. Her lips are closed, and we do not have the benefit of her version of the occurrence. Boaz v. White's Auto Stores, supra. In general it may safely be said that persons in ordinary travel are often called upon to estimate the speed of vehicles approaching upon the highway, or to estimate distances intervening between the vehicle being driven and that being approached. Mistakes with reference thereto frequently occur. Such mistakes of judgment fall far short of establishing want of ordinary care. It cannot be assumed that a driver of a motor vehicle failed to keep a proper lookout unless there is some evidence of some nature, some circumstance or physical fact to show or tend to show such was the case. Groendyke Transport Co. v. Dye, 259 S.W.2d 747 (Tex.Civ. App., Amarillo, 1953, dism.). There is no direct evidence that she failed to maintain a lookout. The physical facts show that the Day vehicle was apparently several hundred feet from the intersection when decedent entered therein. He was traveling at a high and dangerous rate of speed. Shortly before the collision decedent's view of the Day automobile was blocked when it passed Tommy Crouch, who was traveling at a slower speed. About the only other thing we can gain from the evidence is that a collision occurred. It is well settled that the occurrence of a collision does not amount to any evidence of negligence. Rankin v. Nash-Texas Co., 129 Tex. 396, 105 S.W.2d 195 (Comm. of App., 1937). In our opinion the fact situation presented here is not of sufficient probative force to overcome the presumption of due care. The issue of failure to keep a proper lookout was not raised. Consequently, whether or not the instruction contributed to the negative finding would be immaterial. Therefore, it cannot be said that the instruction was calculated to cause and prob-

ably did cause the rendition of an improper judgment.

■■ In connection with the right-of-way issue the court instructed the jury as follows:

"With reference to the term 'right of way,' you are instructed that the driver of a vehicle shall stop in obedience to a stop sign at an intersection where a stop sign is erected, at one or more entrances thereto, and shall proceed cautiously, yielding to vehicles not so obliged to stop which are within the intersection or approaching so closely as to constitute an immediate hazard, but may then proceed.

"You are instructed that by the term 'approaching so closely as to constitute an immediate hazard,' is meant a car that is in such proximity to the intersection that under all of the circumstances existing it would appear to a person of ordinary prudence in the exercise of ordinary care that the driver of the vehicle required to stop should have known that an attempt to proceed into the intersection could not be made in safety."

The instruction complained of followed immediately after the foregoing "right-of-way" instruction.

There is no finding that decedent failed to stop at the stop sign. The evidence is that she stopped. Under the law she was not obligated to remain stopped until the highway was clear of all traffic, but, under the law, she was permitted to enter and cross the intersection so long as there were no vehicles in the intersection and none approaching so closely as to constitute an immediate hazard. The evidence shows without dispute that the Day vehicle was traveling in excess of 65 m. p. h. According to the undisputed mathematical calculations of Patrolman Byrd, the Day vehicle must have been somewhere between 600 and 900 feet west of the intersection at the time Mrs. McFarland started across. Tommy Sukiennik testified the Day auto-

mobile was 100 yards west of the intersection when she started across. Under the circumstances it occurs to us that the proximity of the Day vehicle would not, as a matter of law, constitute an immediate hazard. If not, Mrs. McFarland had a right to proceed across and all other vehicles, including the Day vehicle, would be required to yield the right-of-way to her. Vernon's Ann.Civ.St. Article 6701d, secs. 71, 73(a), and 73(b); Brock v. Underwood, 436 S.W. 2d 557 (Tex.Civ.App., Amarillo, 1968, ref., n. r. e.). It follows therefore that if decedent rightfully entered the intersection first, as the evidence shows she did, the Day vehicle was obligated to yield to her. If this be true, she would not, as a matter of law, be guilty of a failure to yield the right-of-way. Consequently, the jury's finding would be immaterial. For this reason the instruction could not have caused the rendition of an improper verdict.

■ With respect to Special Issue No. 18, we fail to see how the evidence raises an issue upon a duty to apply her brakes after she left the stop sign and entered the intersection. McCall v. Williams, 311 S.W. 2d 743 (Tex.Civ.App., Austin, 1958, ref., n. r. e.) There being no duty, decedent would not be guilty of any negligence in this respect as a matter of law. The finding being immaterial, the instruction would not be such as would be calculated to cause the rendition of an improper judgment.

In conclusion we might add that even though the evidence could be considered sufficient to raise some issue of contributory negligence, we do not believe the instruction resulted in harm to appellant. The trial court carefully instructed the jury of the standard of care by which decedent's conduct was to be measured. The instruction in question amounted to nothing more than an abstract statement of law. While counsel for appellees argued that the instruction had the effect of relieving decedent of the duty to use due care, such is not the law and the instruction did not so advise the jury. We must assume that

the jury followed the specific instructions of the court and measured decedent's conduct by that of an ordinarily prudent person and, in so doing, concluded that the evidence failed to show a breach of duty. Thus we do not believe it can be said that the instruction was calculated to cause and probably did cause the jury to exonerate deceased of contributory negligence.

Finding no reversible error, the judgment of the trial court is affirmed.

McKAY, J., not participating.