*667
 
 HATCHETT, Circuit Judge:
 

 Appellants, James Trautwein and Susan Trautwein, appeal from a judgment notwithstanding the verdict for the bankruptcy trustee, appellee Rosenberg, where the jury found that certain transfers to James Trautwein within a year of bankruptcy were fair consideration for Trautwein’s services to the bankrupt. Because we find that substantial evidence supports the jury’s verdict on fair consideration, that the trial judge erroneously reversed the burden of proof and erroneously weighed the evidence and the credibility of the witnesses, we reverse and reinstate the jury’s verdict.
 

 FACTS
 

 The bankruptcy trustee for the estate of Robert L. Arata, d/b/a Arata & Co., brought this action pursuant to section 67(d) of the Bankruptcy Act (11 U.S.C. § 107),
 
 *
 
 as one of approximately ninety-two actions seeking to set aside certain transfers of cash by the bankrupt within one year preceding the filing of a voluntary petition of bankruptcy on January 24,1974. By order dated July 12, 1978, this case was consolidated with others for trial on all issues, except whether the cash payments to James Trautwein were for fair consideration. Trial of the consolidated cases, and of all other issues in this case, was in November, 1978. Trial of the issue of fair consideration in this case was in December, 1978. The trial judge set aside the jury’s findings at the December trial that the payments to James Trautwein were for fair consideration and entered judgment notwithstanding the verdict in favor of the bankruptcy trustee.
 

 A statement of background facts with respect to the bankrupt in the ninety-two similar cases consolidated for trial in November, 1978, is found in this panel’s opinion of
 
 Rosenberg v. Collins,
 
 624 F.2d 659 (5th Cir., 1980). Trautwein’s relationship to the bankrupt, Arata, was unique; not only was Trautwein a customer of the bankrupt’s company, he also kept the company’s books and contributed other personal services. In the year prior to the bankruptcy, Trautwein made cash deposits totaling $1,250 with the bankrupt's company and received payments from the bankrupt total
 
 *668
 
 ing $64,515.20. At the trial in November, 1978, Trautwein testified that the payments to him from the bankrupt were not compensation for services, but rather were withdrawals from his account with the bankrupt.
 

 At Trautwein’s separate trial in December, 1978, the issue was whether any funds Trautwein received were for services rendered rather than as distributions from the commodity accounts. There, Trautwein testified that he had an oral compensation agreement with Arata that he would get 2.5 percent of the closed profits of Arata & Co. on the profitable contracts. Trautwein testified that during 1973 he spent forty to fifty hours per week, working on quarterly statements and talking to all of the customers. Trautwein testified further that he did not learn that the statements showed fictitious amounts until December, 1973. He stated that his impression at the November, 1978, trial was that Arata paid him nothing for bookkeeping and that the monies he received were from the commodity account. He testified that he had a different impression at the December trial, having since read a deposition of Arata that he had not seen before, which indicated that Arata meant the money to be compensation to him.
 

 At the December, 1978, trial, Arata testified that Trautwein performed bookkeeping and other substantial services for him. He also confirmed the oral agreement for compensation that Trautwein had with him and the fact that Trautwein did not know the quarterly statements showed fictitious amounts until December 1973.
 

 At the close of the evidence, the bankruptcy trustee moved for a directed verdict on the grounds that: (1) Trautwein’s previous testimony at the November trial established that the payments in question came to him as a result of his status as a customer or investor, rather than for services rendered; (2) the amounts of the payments were established by requests for admission; (3) the evidence with regard to services rendered was in the nature of an offset, which had not been pleaded and on which Trautwein failed to carry his burden of proof as to the amount of the offset; and (4) the evidence was insufficient to support a jury verdict. The trial judge favored granting the motion, but deferred ruling on the motion until after the jury rendered its verdict.
 

 Before retiring the jury, the trial judge instructed the jury that in order to set aside a transfer of property by the bankrupt pursuant to section 67(d), the bankruptcy trustee must prove that the transfer was made without fair consideration, and that the transfers were without fair consideration if Arata lacked good faith when he made them. The jury returned a verdict in favor of Trautwein, finding every payment in 1973 to be with fair consideration. The trial judge then granted the bankruptcy trustee’s motion and entered judgment notwithstanding the verdict. The trial judge reasoned that:
 

 The evidence establishes, such that reasonable men exercising impartial judgment may not differ in their conclusion,
 
 see Brown v. State Farm Mutual Automobile Casualty Co.,
 
 506 F.2d 976, 978 (5th Cir. 1975), that defendant did not receive the transfers in question in exchange for services rendered to Arata. The testimony revealed that defendant agreed with Arata to receive 2.5 percent of the profits made by Arata & Co. in return for his services. Defendant failed to prove that Arata & Co. earned any profits. Further, defendant did not receive the transfers in question as profits but as withdrawals from his fictitious commodities account with Arata. These transfers were supposedly return on his investment and not compensation for his services. As such, they were not made for fair consideration.
 

 ISSUE
 

 We must determine whether the trial judge erred in granting the bankruptcy trustee judgment notwithstanding the verdict.
 

 The bankruptcy trustee argues that the trial judge correctly granted judgment notwithstanding the verdict because:
 

 
 *669
 
 (1) the evidence establishes as a matter of law that the transfers in question were withdrawals from Trautwein’s fictitious commodities account, rather than paychecks pursuant to Trautwein’s oral employment contract; and,
 

 (2) the bankruptcy trustee’s theory that services rendered constitute fair consideration for the transfers in question is a defensive issue or offset which was not pleaded nor tried by consent and on which Traut-wein failed to carry his burden of proof.
 

 STANDARD OF REVIEW
 

 In
 
 Sulmeyer v. Coca Cola Co.,
 
 515 F.2d 835, 841 (5th Cir.),
 
 cert. denied,
 
 424 U.S. 934, 96 S.Ct. 1148, 47 L.Ed.2d 341 (1975), this court stated the legal test to be applied when appeal is taken from a judgment notwithstanding the verdict:
 

 Generally a motion for directed verdict or judgment n. o. v. should be granted only in two situations: “First, where there is a complete absence of pleading or proof on an issue or issues material to the cause of action or defense. . . . Second, where there are no controverted issues of fact upon which reasonable men could differ.” 5A Moore’s Federal Practice ¶ 50.02[1] (2d ed. 1974). Accord
 
 Alman Bros. Farms & Feed Mill, Inc. v. Diamond Lab., Inc.,
 
 437 F.2d 1295 (5th Cir. 1971). In passing on the motion, the trial court must view the evidence in the light most favorable to the party opposing it, giving the party the benefit of all reasonable inferences in its favor.
 
 Boeing Co. v. Shipman,
 
 411 F.2d 365 (5th Cir. 1969). The standard of review at the appellate level is the same. 9 C. Wright & A. Miller, Federal Practice and Procedure § 2524 (1971).
 

 I
 

 In light of the
 
 Sulmeyer
 
 standard, we consider the bankruptcy trustee’s first contention: that the evidence establishes as a matter of law that the transfers in question were withdrawals from Trautwein’s fictitious commodities account, rather than paychecks pursuant to Trautwein’s oral employment contract.
 

 The record contains substantial testimony that Arata had agreed to pay Trautwein for his services; that Trautwein rendered substantial services from 1969 to 1973, including solicitation for customers, handling customer questions, and preparation of quarterly statements to customers on their accounts based on information from Arata; and that Arata himself admitted after making the payments and before filing for bankruptcy that he probably owed Traut-wein more money and that he had not paid Trautwein what Trautwein had earned for the company. Such evidence was fully sufficient to support the jury finding that Trautwein’s services were fair consideration for the payments received in satisfaction of either a contractual indebtedness or a quantum meruit indebtedness.
 

 In addition to contending that reasonable men could only conclude that the transfers in question were withdrawals from Traut-wein’s fictitious commodities account, the bankruptcy trustee contends that Traut-wein’s prior testimony was a judicial admission and conclusively established that the transfers he received were withdrawals, rather than paychecks. In support of this contention, the bankruptcy trustee cites
 
 Backar v. Western States Producing Co.,
 
 547 F.2d 876 (5th Cir. 1977);
 
 Monsanto Chemical Co. v. Payne,
 
 354 F.2d 965 (5th Cir. 1966);
 
 Hercules Powder Co. v. Costa,
 
 289 F.2d 571 (1st Cir. 1961);
 
 Griffin v. Superior Insurance Co.,
 
 161 Tex. 195, 338 S.W.2d 415 (1960);
 
 Stanolind Oil & Gas Co. v. State,
 
 136 Tex. 5, 145 S.W.2d 569 (1940).
 

 This contention lacks merit. All of the cases cited by the bankruptcy trustee uphold the right of a party to correct his prior testimony and to explain that he was mistaken although testifying in good faith. None of the federal cases and none of the Texas cases cited by the bankruptcy trustee in his brief involves a situation of correction and explanation; none of these cases denies a litigant his right to correct prior testimony under a mistake of fact; and none of these cases authorizes the trial judge in a jury case to pass on credibility and good
 
 *670
 
 faith where the explanation has been made and admitted for the jury to evaluate.
 

 Trautwein corrected and explained his testimony at the November trial as having been under a mistake of fact, and the explanation was reasonable. Under cross-examination concerning the payments from Arata, Trautwein testified he gave a vague answer at the November trial; that he understood differently from opposing counsel; that he thought opposing counsel was trying to infer that he had traded commodities with Arata when he had not; that he had a different impression or understanding at the December trial from his impression at the former proceeding; that he had since read a deposition of Arata’s that he had not seen before indicating that Arata meant the money to be compensation to him; and that he himself had no way of knowing because he never received a statement on what monies were paid as return on investment and what monies were paid as compensation. Therefore, the jury was reasonably entitled to infer and conclude that his former testimony was made under a mistake of fact.
 

 Based on
 
 Kridler v. Bituminous Casualty Corp.,
 
 409 F.2d 88, 91 (5th Cir. 1969), “[a] motion for directed verdict must be acted on without weighing credibility of witnesses, which is for the jury.” There, this court reversed a directed verdict where the trial court gave little credence to the plaintiff’s testimony due to self interest and prior misstatement by the plaintiff. Here, we must do likewise and reverse the judgment notwithstanding the verdict.
 

 II
 

 The bankruptcy trustee argues that the trial court correctly found that Trautwein failed to plead and prove fair consideration as an affirmative defense of offset to the bankruptcy trustee’s section 67(d)(2) claim of transfers without fair consideration.
 

 The bankruptcy trustee had moved for a directed verdict on the ground that the alleged indebtedness of Arata to Trautwein presented the affirmative defense of offset under the case of
 
 Chicago Great Western Railway Co. v. Peeler,
 
 140 F.2d 865 (8th Cir. 1944), in that Trautwein had neither pleaded nor proved the offset.
 
 Peeler,
 
 however, is not appropriate authority for the bankruptcy trustee’s asserted proposition that fair consideration for a challenged transfer is an offset which Trautwein must plead and prove in order to avoid a section 67(d)(2) claim for a transfer within one year of bankruptcy without fair consideration.
 
 Peeler
 
 makes no reference to a section 67(d)(2) claim, but simply affirms the general rule that an offset is an affirmative defense that must be pleaded.
 
 Peeler
 
 involved a Federal Employer’s Liability Act case by a switchman against his employer for personal injuries in an accident in his employer’s railroad yards.
 

 Further, the bankruptcy trustee, in its subsequent post-trial brief in support of its motion for directed verdict, conceded that the burden of proof in the sense of “burden of persuasion remains on the trustee to prove the transfer was made without fair consideration,” citing 4
 
 COLLIER ON BANKRUPTCY
 
 ¶ 67.43 (14th Ed. 1978).
 

 Additionally, Trautwein was never in possession of legitimate documents or accurate information showing the full extent of profits made by Arata and owed to Trautwein. Consequently, Trautwein never had control of the proof necessary to invoke the principle that the litigant who has control of the proof must produce it.
 
 Cliett v. Scott,
 
 102 F.2d 725 (5th Cir. 1939);
 
 Miller v. Lykes Bros.
 
 —Ripley
 
 S.S. Co., Inc.,
 
 98 F.2d 185 (5th Cir. 1938). These cases support Trautwein’s position that the trustee had control of the proof and should therefore have sustained the burden of going forward with the evidence; and that Trautwein never was under such a burden because he never had access to legitimate documents and accurate information concerning the profits Arata was making on legitimate trades.
 

 CONCLUSION
 

 Accordingly, we hold that the trial judge erroneously granted the bankruptcy trustee a judgment notwithstanding the verdict. We find that substantial evidence supports
 
 *671
 
 the jury’s verdict on fair consideration, that the trial judge erroneously reversed the burden of proof and erroneously weighed the evidence and the credibility of witnesses. Thus, we reverse and reinstate the jury’s verdict.
 

 REVERSED.
 

 *
 

 Section 67(d) of the 1898 Bankruptcy Act (11 U.S.C. § 107(d)), provides, in pertinent part:
 

 (d)(1) For the purposes of, and exclusively applicable to, this subdivision: (a) “Property” of a debtor shall include only his nonexempt property; (b) “debt” is any legal liability, whether matured or unmatured, liquidated or unliquidated, absolute, fixed, or contingent; (c) “creditor” is a person in whose favor a debt exists; (d) a person is “insolvent” when the present fair salable value of his property is less than the amount required to pay his debts; and to determine whether a partnership is insolvent, there shall be added to the partnership property the present fair salable value of the separate property of each general partner in excess of the amount required to pay his separate debts, and also the amount realizable on any unpaid subscription to the partnership of each limited partner; and (e) consideration given for the property or obligation of a debtor is “fair” (1) when, in good faith, in exchange and as a fair equivalent therefor, property is transferred or an antecedent debt is satisfied or (2) when such property or obligation is received in good faith to secure a present advance or antecedent debt in an amount not disproportionately small as compared with the value of the property or obligation obtained.
 

 (2) Every transfer made and every obligation incurred by a debtor within one year prior to the filing of a petition initiating a proceeding under this title by or against him is fraudulent (a) as to creditors existing at the time of such transfer or obligation, if made or incurred without fair consideration by a debtor who is or will be thereby rendered insolvent, without regard to his actual intent; or (b) as to then existing creditors and as to other persons who become creditors during the continuance of a business or transaction, if made or incurred without fair consideration by a debtor who is engaged or is about to engage in such business or transaction, for which the property remaining in his hands is an unreasonably small capital, without regard to his actual intent; or (c) as to then existing and future creditors, if made or incurred without fair consideration by a debtor who intends to incur or believes that he will incur debts beyond his ability to pay as they mature; or (d) as to then existing and future creditors, if made or incurred with actual intent as distinguished from intent presumed in law, to hinder, delay, or defraud either existing or future creditors.