Kathleen **BATES** et al., Appellants,

v.

Helen **BARCLAY** et al., Appellees.

No. 7335.

Court of Civil Appeals of Texas, Beaumont.

Aug. 31, 1972.

Rehearing Denied Sept. 28, 1972.

Harold Peterson, Beaumont, for appellants.

Fuller, Fuller & McPherson, Port Arthur, for appellees.

KEITH, Justice.

Upon the basis of a jury verdict, the trial court denied the plaintiffs a recovery and this appeal follows. Because of the number of individuals involved, we will speak of the parties by their surnames.

A Chevrolet automobile driven by Paul Entrekin collided with a Ford car being driven by James Barclay. Barclay and Mr. and Mrs. Archie Jones, passengers in the Barclay vehicle, were killed instantly. Entrekin and his passenger, Joseph Bates, both received serious injuries.

The survivors of Mr. and Mrs. Jones brought suit against Entrekin, Barclay's Estate, and Barclay's employer alleging negligence on the part of both drivers which proximately caused the death of Mr. and Mrs. Jones. Joseph Bates sued Barclay's Estate and his employer for personal injuries, medical expenses, etc.

These suits were consolidated, amended pleadings were filed by the original plaintiffs, and Entrekin filed a cross action over against Barclay's Estate and his employer seeking damages for his own personal injuries, medical expenses, etc. Before the commencement of the trial, the suit by the survivors of Mr. and Mrs. Jones was discontinued. Later, the surviving widow and minor children of Barclay filed a cross action against Entrekin seeking damages by reason of the death of their husband and father which was alleged to have been proximately caused by Entrekin's negligence. We have no question concerning the adequacy of the pleadings or the position of the parties in the litigation.

Upon the trial, the jury acquitted the deceased Barclay of all acts of negligence, and convicted Entrekin of failure to keep a proper lookout and driving his vehicle at an excessive rate of speed. Each finding against Entrekin was followed by a finding that such act or omission was a proximate cause of the collision. The jury also found that each of the acts of negligence found against Entrekin was the "sole proximate cause" of the collision. We note that there was no objection made to the form of the verdict, its acceptance by the trial court, or the entry of judgment based thereon.

The jury awarded substantial sums to the widow and minor children of Barclay but no challenge of the amount thereof is made by the appellant, Entrekin, against whom monetary judgment in their favor was rendered. Entrekin and Bates have appealed from the order overruling their amended motions for new trial.

Entrekin and Bates now present points directed against the findings of the jury that Entrekin was negligent and the refusal of the jury to find that Barclay was negligent. Each of the findings, and nonfindings, are challenged by no evidence and great weight and preponderance of the evidence points. Appellants also have points challenging the testimony of the investigating highway patrolman and Barclay's expert witness, Dr. William Tonn. The nature of the presentation of the complaints permits us to discuss jointly all of the points mentioned.

The nighttime accident occurred at the intersection of State Highway 87 and Main Avenue in Port Arthur. The highway is a divided highway, each roadway having four lanes at the intersection, three through lanes and one left-turning lane.

Main Avenue crosses both roadways of the highway and stop signs were posted upon both sides of the eastbound and westbound lanes of the highway requiring traffic upon Maine Avenue to stop before entering either of the highway lanes.

The eastbound and westbound lanes of the highway are separated by a grassy median strip about seventy feet in width. Barclay and his passengers having left a restaurant located in the southwest quadrant of the intersection, entered Main Avenue to the east of the restaurant and proceeded northerly on Main Avenue across the eastbound lanes of Highway 87 and the center esplanade. Having entered the westbound lane of the highway, the Barclay vehicle was struck by Entrekin's westbound vehicle while Barclay was in the northern portion of the middle lane of the three westbound lanes upon the highway and in the right traffic lane of Main Avenue. The front of the Entrekin vehicle struck the Barclay vehicle near the center of the right door. Bates had no recollection of the collision or the events immediately preceding, and the only participant who could testify as to the position of the two vehicles and their movements immediately prior to the collision was Entrekin.

A filling station attendant, Cryer, who was in his place of employment some two hundred feet to the east of the intersection, observed the Entrekin vehicle before the collision but did not see the actual impact. He said that Entrekin was driving at a normal rate of speed and that he did not notice anything unusual about the speed. The posted legal speed limit in the area was fifty miles per hour.

Barclay's counsel called Emory Joseph Moore, who testified that he was traveling south on Main toward the intersection. He said that when he was about five blocks away, he noticed headlights facing him on Main "lift up just a little and level back off again before they went out," after which "a cloud of dust or smoke appeared in that area." He estimated the time interval of the lights "lifting" and "leveling back" by snapping his fingers, indicating an extremely short period.

Entrekin had entered the highway some distance to the east of the place of the accident and said that he was driving at approximately the legal rate of speed when he first noticed the Barclay vehicle as it left the restaurant. At that time, Barclay's vehicle was facing in an easterly direction with its lights shining in Entrekin's direction. According to Entrekin, Barclay's car turned north on Main, crossed the eastbound lane of the highway, and proceeded across the median strip. When it was about halfway across the strip, proceeding at what he estimated to be about thirty miles per hour and accelerating, he realized that it was not going to stop in obedience to the sign protecting the westbound lane of the highway from opposing traffic on Main Avenue. Entrekin said that he then applied his brakes which locked his wheels, veered to the right, but the collision nevertheless occurred.

State Highway Patrolman Brown arrived upon the scene about forty minutes after the occurrence, after the participants had been removed but before the cars had been moved from where they had come to rest. Brown stepped off the various distances, one of which was a single skid mark on the highway which he estimated to have been 111 feet in length. He testified that the Entrekin vehicle traveled 114 feet after the impact while the Barclay vehicle was 144 feet beyond the point of impact. Both vehicles were upon the dirt area west and north of the north curb on the highway.

We turn our attention first to appellants' points eight and nine wherein they complain of the admission of Patrolman Brown's testimony as to the speed of the Entrekin vehicle and the skid marks left in its attempt to stop. Mr. Brown, a deputy United States Marshal at the time of the trial, had been a state highway patrolman for nearly ten years at the time he investigated the accident in issue. He had investigated many accidents and had attended

special schools where he had been trained in accident investigation. Having determined the point of impact by the presence of debris, "battery acid and the gouge marks and such as this," he stepped off the distances involved. In passing, we note that his distances so stepped off were within inches of the actual distances found by the professional surveyor brought by the appellants.

Based upon his training, experience, and the facts disclosed by his investigation of the accident, Brown was permitted to testify that in his opinion the Entrekin vehicle was "going at least ninety [miles per hour] if not more" immediately prior to the collision.

Patrolman Brown was subjected to a rigorous cross-examination but remained firmly committed to his original testimony. Appellants' counsel did succeed in eliciting from Brown the fact that the Entrekin vehicle was equipped with a tachometer which had locked in place at 7000 RPM but the witness was unable to translate this into actual speed.

By point ten, appellants attack the testimony of Dr. William H. Tonn, Jr., a consulting engineer who had specialized in analysis of accidents or collisions for more than twenty years, who was tendered by Barclay's counsel as an expert witness. Based upon the testimony of Patrolman Brown as to the skid marks, etc., his own examination of numerous photographs tendered into evidence, and his evaluation of the weight of the several vehicles, Dr. Tonn gave testimony that the Entrekin vehicle was traveling ninety miles per hour before the collision.

Other factors used by Dr. Tonn enabled him to express the opinion that the Barclay vehicle was traveling at a maximum rate of twenty-five miles per hour at the time of impact. Appellants' cross-examination of Dr. Tonn was not of material benefit to their cause.

With admirable candor, appellants' counsel says:

"This is a case in which the crucial law problem is fairly elementary. If the testimony of witness Brown and witness Tonn is to stand, the verdict is probably sustained as to Entrekin's negligence. If, on the other hand, this testimony of witness Brown and witness Tonn is found to be unreliable and speculative, being based upon assumptions not in evidence, then the verdict as to Entrekin's lookout failure and excessive speed should not stand."

We have carefully reviewed the record in the light of the complaints addressed to the judgment and are of the opinion that the critical testimony of Brown and Tonn was properly admitted by the trial court and supports the verdict convicting Entrekin of excessive speed proximately causing the collision.

Dr. Tonn has been named as one of the "small and esoteric group known as accident analysts" whose "scientific training qualifies him to make an *analysis* and *reconstruction* of a traffic collision." 38 Tex.Law Rev. 503, 504 (1960), a casenote involving Bolstad v. Egleson, 326 S.W.2d 506 (Tex.Civ.App., Houston, 1959, error ref. n. r. e.). Dr. Tonn's qualifications are set out in *Bolstad*, supra (326 S.W.2d at p. 518), and our record shows that he has gained additional experience in his chosen field since *Bolstad* appeared.

Dr. Tonn's testimony, based as it was upon his scientific analysis of the several factors mentioned in *Bolstad*, supra, was properly received by the trial court. However, appellants contend that Dr. Tonn's testimony in this case was improperly received for the reasons set out in Polasek v. Quinius, 438 S.W.2d 828, 835–836 (Tex.Civ.App., Austin, 1969, error ref. n. r. e.). It is apparent from a study of the record in this case that appellants' able counsel had *Polasek* before him in cross-examining Dr. Tonn.

We disagree with appellants when they contend that *Polasek* is " 'on all fours' " with the case at bar. We have no disinter-

ested eye witness disputing Dr. Tonn's hypothetical facts as exemplified by Judy Lester in *Polasek*. Instead, we have only the testimony of Entrekin himself, an interested witness, who gave, according to Patrolman Brown, two different stories concerning the accident. Dr. Tonn's testimony was properly received by the trial court if the facts related to him in the hypothetical question found support in the record. These facts, taken largely from the testimony of Patrolman Brown, lead us to a consideration of appellants' complaints about the admission of Brown's testimony.

We quote the entire argument of the appellants as to Brown's testimony:

"Next we go to the excessive speed consideration. Entrekin and witness Cryer both support an ordinary speed, one [Cryer] having no connection with the occurrence of the collision. As to witness Brown, we believe that the Court's perusal of his entire testimony will show his utter lack of qualifications to express an estimate as to Entrekin's speed."

Having previously noted that Cryer did not observe the collision, we point out that he placed himself in a filling station some 200 or more feet from the place of the impact. He casually looked up from his task of counting the proceeds of his day's business and noted Entrekin's vehicle go by at what he considered to be a "normal" speed. The evidence shows that Entrekin was one of his customers and had even been in the station earlier in the day of the tragedy.

■ Entrekin, as a plaintiff and defendant, and one of the moving parties in this multiple tragedy, was an interested witness. At best, Entrekin's testimony simply raised a fact issue for determination by the jury.

Gevinson v. Manhattan Construction Co. of Okl., 449 S.W.2d 458, 467 (Tex.1969). See also, Taylor v. Bair, 414 F.2d 815, 818 (5th Cir., 1969), wherein the Texas authorities are examined. Points eight, nine, and ten are overruled.

Having concluded that the trial court properly received the evidence of Brown and Tonn, we overrule appellants' points challenging the findings of negligence against Entrekin and the nonfindings as to Barclay. Thus, we overrule appellants' points one through seven.

By points twelve and thirteen appellants complain that the jury answers of zero as to the damage issues submitted on behalf of Entrekin and Bates "are so against the great weight and preponderance of the evidence as to reflect bias and prejudice as to him." We have heretofore noted that the jury acquitted Barclay of negligence, convicted Entrekin of negligence and found that Entrekin's negligence was the "sole proximate cause" of the collision.

■ The findings now attacked related only to the damage issues; and, there being no findings upon which an award of damages could be based, the failure to assess damages was immaterial. Texas & Pacific Railway Company v. Van Zandt, 159 Tex. 178, 317 S.W.2d 528, 530 (1958); Garza v. San Antonio Transit Co., 180 S.W.2d 1006, 1009 (Tex.Civ.App., San Antonio, 1944, error ref., w. o. m.); Gavrel v. Young, 407 S.W.2d 518, 520 (Tex.Civ.App., Houston, 1966, error ref. n. r. e.). Points twelve and thirteen are overruled.

Having examined the record carefully and finding no error in the proceedings, the judgment of the trial court is in all things affirmed.