P.T. & E. COMPANY and Wyman Lee Scroggins, Appellants,

v.

Terry Ashley BEASLEY, et. al., Appellees.

No. 09–84–300 CV.

Court of Appeals of Texas, Beaumont.

Decided Aug. 29, 1985.

Rehearing Denied Sept. 25, 1985.

**192**

William D. Perkins, Lufkin, for appellants.

Bill F. Griffin, Jr., Center, for appellees.

BURGESS, Justice.

This is a wrongful death and survival action. On April 4, 1977, at about 5:00 a.m., a collision occurred between a truck-tractor with pole trailer driven by appellant Wyman Lee Scroggins, employee of appellant P.T. & E. Company and a pickup truck driven by James F. Beasley near the intersection of Highway 84 and U.S. Highway 59 in Tenaha, Shelby County, Texas. The collision resulted in the death of James F. Beasley.

Appellees, Margaret Frances Beasley, Terry Ashley Beasley, James M. Beasley, William L. Beasley, Nancy J. Baugh Powell, and Lena Johns, heirs of James F. Beasley brought this action against appellants based on common law negligence, the Texas Wrongful Death Statute (*TEX.REV. CIV.STAT.ANN. art. 4671* [Vernon Supp. 1985]), and the Texas Survival Statute (*TEX.REV.CIV.STAT.ANN. art. 5525* [Vernon 1958]). Trial was to a jury which found that: Wyman Lee Scroggins was negligent in his lookout, speed, and in failing to make proper application of his brakes. They further found that each act of negligence was a proximate cause of the accident. The jury refused to find the deceased negligent in any manner.

The jury found that Margaret Frances Beasley sustained $180,000 in damages for loss of "care, maintenance, support, services, advice, counsel, and contributions of pecuniary value" that she would in reasonable probability have received from the decedent had he lived, and $125,000 in damages for past and future loss of consortium (to include companionship, society, etc.) The jury further found that Margaret Beasley had sustained $125,000 in damages for mental anguish as result of her husband's death. Additionally, the jury awarded damages to the adult children of James F. Beasley for their pecuniary losses (care, advice, counsel, contributions, etc.) in the following sums: $50,000 to Terry A. Beasley, $10,000 to Nancy Baugh Powell, $10,000 to James M. Beasley, and $10,000 to William L. Beasley. Also, the jury awarded damages to the deceased's children for mental anguish in the following amounts: $10,000 to Terry A. Beasley, $10,000 to Nancy Baugh Powell, $10,000 to James M. Beasley, and $10,000 to William L. Beasley. In addition, the jury awarded damages to Lena Johns, the decedent's mother, $10,000 for her pecuniary loss (fu-

ture contributions and services, etc.) and $10,000 for her mental anguish. It was stipulated prior to trial that the decedent, James F. Beasley, was 59 years of age, had a life expectancy of 16.72 years, and the sum of $2,547.50 incurred by the Beasley estate was reasonable and necessary for the funeral and burial of the decedent.

The trial court rendered judgment on the verdict for the plaintiffs but pursuant to defendant's motion disregarded the special issues awarding damages for mental anguish. Defendant's Motion for New Trial was overruled. Appeal was perfected to this court; the appellees by way of three cross points of error complain of the trial court's refusal to allow damages for mental anguish.

Appellees have filed a Motion to Dismiss the Appeal of Wyman Lee Scroggins for Want of Jurisdiction. After reviewing the same, we find that such motion is without merit and is, accordingly, overruled.

▆▆▆ Appellants in their first five points of error attack the legal and factual sufficiency of the evidence regarding the special issues pertaining to their liability. When confronted with "no evidence" points of error, this court is required to consider only that evidence and reasonable inferences therefrom which viewed in its most favorable light supports the jury's finding and to reject all evidence or inferences to the contrary. *Schaefer v. Texas Emp. Ins. Ass'n,* 612 S.W.2d 199, 201 (Tex.1980). In reviewing factual sufficiency or "great weight and preponderance of the evidence" points, we must examine the entire record to determine whether the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the finding should be set aside. *Garza v. Alviar,* 395 S.W.2d 821 (Tex.1965); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951).

In the case before us, the record discloses the testimony of John S. Boone II., the Texas Highway Patrolman who investigated the accident. Patrolman Boone testified in detail concerning his investigation. Boone's detailed field sketch of the scene

of the collision was admitted into evidence. Boone measured the skid marks of Scroggins' truck from the point of origin to the point of impact and determined the distance to be 100 feet. He found some dimmer skid marks back further west of the intersection. He measured distances from the curbs and the intersection in relation to the point of impact. He determined the pavement was dry. Boone testified that as part of his investigation, he obtained a number of photographs of the scene of the collision which were introduced into evidence. One photograph showed the point of impact and another photograph was of an intersection on Highway 59 several hundred feet west of the collision site and showed a sign posting a 35 m.p.h. speed limit. The speed limit posted for the collision site was 30 miles per hour.

There was testimony that Scroggins, just prior to the collision, was traveling in an easterly direction on Highway 59 continuing as Highway 84. U.S. Highway 59 and Highway 84 merge together from Timpson, Texas towards Tenaha. Highway 59 separates from Highway 84 at Tenaha and goes northward. It was near this intersection between Highways 84 and 59 that the fatal collision took place. The intersection in question had a control light which was operating at the time of the collision. The Beasley vehicle exited from the vicinity of an Exxon station and started to cross Highway 84 in a northward direction when struck by the pole truck driven by Scroggins. Patrolman Boone checked the lights in the Beasley vehicle and the Scroggins truck and found neither of them on.

Dr. Don L. Ivy, a research engineer at the Texas Transportation Institute was called to testify as an expert witness. Dr. Ivy personally examined the scene of the collision where he made measurements and observations of the pavement. He examined Patrolman Boone's accident report and used Boone's field sketch of the accident. Dr. Ivy noted Boone's measurements of the skid marks and Boone's observations regarding the relative positions of the vehicles after the collision. Dr. Ivy made and

examined a number of photographs of the scene of the collision and of the vehicles. These photographs were admitted into evidence. Dr. Ivy took into consideration the field of view of the drivers of both vehicles and utilized conservative estimates of coefficient frictions in his calculations of the relative speeds of the vehicles. Dr. Ivy also took into account the weights of both vehicles. Based on all the information that he obtained, Dr. Ivy estimated that the speed of the Scroggins vehicle just prior to the collision was fifty-three (53) miles per hour plus or minus five (5) miles per hour. Dr. Ivy further added that the estimated speed of the Scroggins vehicle at the point of impact was thirty-six (36) miles per hour. Also, Dr. Ivy testified that, in his opinion, that if the Scroggins' truck had been going thirty-five (35) miles per hour or less, the collision would not have occurred. Under those conditions, the tractor trailer could have stopped short of the position of the Beasley pickup.

Wyman Scroggins testified that he was traveling between thirty-five (35) and forty (40) miles per hour just prior to the collision. Scroggins had just proceeded through the intersection of Highway 84 and U.S. 59 heading east. The light facing him at the intersection was green. It was still dark and the weather was foggy. Scroggins stated that all the headlights and foglights on his truck were on. At some point past the intersection, appellant noticed the Beasley pickup ten to fifteen feet immediately in front of him. Scroggins related that the Beasley vehicle pulled out in front of him. Upon seeing the pickup, Scroggins immediately locked all the brakes on his truck and started to jackknife the truck to the left to keep from hitting the pickup. However, these actions failed to prevent the ensuing collision. On cross-examination, Scroggins asserted that he had no reason to stop or slow down through the intersection. He contended that he did not see any speed zone sign. Scroggins insisted that the speed limit at the intersection and through Tenaha was thirty-five (35) miles per hour although Boone's testimony placed it at thirty (30).

■ ■ In considering these challenges to the sufficiency of the evidence, we must remain cognizant of the fact that it is for the jury, as trier of fact, to judge the credibility of the witnesses, to assign the weight to be given their testimony, and to resolve any conflicts or inconsistencies in the testimony. This court may not substitute its judgment for that of the jury if the challenged findings are supported by some evidence of probative value and are not against the great weight and preponderance of the evidence. *Commonwealth Lloyd's Ins. Co. v. Thomas,* 678 S.W.2d 278, 289 (Tex.App.—Fort Worth 1984, writ ref'd n.r.e.). There is evidence of probative value from which the jury could reasonably find Scroggins negligent. We hold that there is sufficient evidence to support the jury's answers. Appellant's points of error one through five are overruled.

■ ■ Next, appellants complain of the jury's refusal to find the deceased negligent. Appellants contend the testimony of Scroggins stands uncontroverted as to Beasley's negligence. However, Scroggins' testimony, being that of an interested witness, merely raised a fact issue for determination by the jury. *Bates v. Barclay,* 484 S.W.2d 955 (Tex.Civ.App.—Beaumont 1972, writ ref'd n.r.e.). The jury could properly disbelieve him. Also, there is a strong presumption that the deceased exercised ordinary care for his own safety. The burden rests upon appellants to overcome the presumption by competent evidence so conclusively that reasonable minds could not differ with respect to the issues of contributory negligence. *North Texas Producers Association v. Stringer,* 346 S.W.2d 500 (Tex.Civ.App.—Fort Worth 1961, writ ref'd n.r.e.); *Day v. McFarland,* 474 S.W.2d 946 (Tex.Civ.App.—Tyler 1971, writ ref'd n.r.e.). The evidence does not conclusively establish Beasley's negligence as a matter of law. The jury's answers are not contrary to the great weight and preponderance of the evidence. Appellants' points of error six and seven are overruled.

Appellants' next four points of error attack the sufficiency of the evidence with respect to the damage findings by the jury.

The decedent's age and life expectancy was stipulated to by the parties. Dewey Cox, the international representative for the Boilermakers Union testified to the relative wage rates and the retirement benefits that the deceased would have received. Cox testified that the average number of hours that a Boilermaker like the deceased would have worked in a year was 1600 hours. There was evidence that James F. Beasley worked more than 2000 hours in 1976, the year before his death. Beasley's W-2 form for 1976 showed that he had earned $22,969.32. Cox further testified that the wage rates increased from $10.55 per hour in 1977 to 16.40 per hour in 1983. Testimony also showed that if the decedent had worked to age 65, he would have received a pension of $504.00 per month for the rest of his life. Cox testified that he personally knew the deceased and the deceased was a very good and dependable worker. Margaret Beasley testified that she and the deceased enjoyed a good close loving relationship. She testified that her husband was a good financial supporter and that she never had to work. She testified her husband intended to continue working as a Boilermaker until age 65. Mrs. Beasley testified that her husband, at the time of his death, was in reasonably good health and was "all right in every way" even after some minor heart surgery. Mrs. Beasley depended on her husband to run their 99 acre farm with sixty (60) head of cattle and to do the manual labor, and repair work on the equipment, the house and the car. A number of photographs depicting the Beasleys together and their family life were admitted into evidence. Mrs. Beasley generally testified that her husband's death worked a hardship on her and that her husband's love and companionship was a loss which could not be replaced. Mrs. Beasley stated that she received $234 per month for five years from the Boilermakers' Union, but was unable to receive any other benefits. The four Beasley children, all adults, testified as to the loss of their father. The Beasley children were close to their parents and particularly depended upon their father for financial and moral support.

Terry Beasley, age twenty-eight at the time of the trial, is the youngest child. Terry testified that his father supported him with regard to his college education. Terry had intended to continue his education with a major in Criminal Justice and seek a career with the U.S. Customs Service or Secret Service. When his father died, Terry was compelled to drop out of college and move back home to assist his mother. Terry testified that he performed all the chores around the farm which his father would have done. Terry related how his father helped him obtain a job as a Boilermaker to help with school and provided him with a car to commute to his studies.

Nancy Powell, William Beasley, and James M. Beasley all related that they were very close to their father and often relied upon their father for financial assistance and his guidance and counsel. They would visit their father and mother frequently. They considered their father's death a very hard loss. The testimony of the surviving sons, daughter and widow of James F. Beasley reveals a close-knit stable, caring and loving family which sustained the most damaging loss they could have suffered, the loss of the head of their family.

In cases where recovery of damages as pecuniary loss is sought on behalf of a surviving spouse, the law rarely, if ever, furnishes a precise legal measure of recovery. Thus, the amount to be awarded rests primarily within the discretion of the jury, and unless the award is so large as to indicate that it was the result of passion, prejudice, partiality, or corruption or that the evidence had been disregarded, the verdict of the jury is conclusive and will not be set aside as excessive, either by the trial court or on appeal. *Malone & Hyde, Inc. v. Hobrecht*, 685 S.W.2d 739 (Tex.App.—San Antonio 1985, writ requested). Often

times it is extremely difficult to determine the pecuniary value of a spouse aside from the actual monetary contributions made to the marriage. The law hence vests the jury with considerable discretion and latitude in drawing upon their own knowledge, experience and sense of justice guided by proper instructions of the court. *Id.* Under the evidence adduced it is not unrealistic to conclude that the decedent would have contributed from his employment and full retirement benefits alone in the vicinity of $180,000 had he lived sixteen additional years. This figure does not even include the value of his care, maintenance, services, advice, counsel and other contributions having pecuniary value to the marriage. We also recognize that adult children may recover damages for the wrongful death of parents, and in arriving at such damages the loss of prospective contribution from the deceased parent may be taken into consideration. *Houston Gas & Fuel Co. v. Perry,* 127 Tex. 102, 91 S.W.2d 1052 (1936); *Hartzell Propeller Co. v. Alexander,* 485 S.W.2d 943 (Tex.Civ.App.—Waco 1972, writ ref'd n.r.e.).

With respect to Mrs. Beasley's loss of consortium, the jury was permitted to consider affection, solace, comfort, companionship, society, assistance and sexual relations necessary to a successful marriage as items constituting consortium. The evidence showed a loving and happy relationship of thirty-four years. The presence of each of the items collectively constituting consortium may readily be inferred from the testimony of Mrs. Beasley and her children.

▬▬▬ The loss of consortium and its constituent elements necessarily involve subjective states incapable of precise translation into a monetary amount. The duty of resolving the monetary value to be placed on the loss falls upon the jury and its impartial conscience and judgment acting reasonably, intelligently and in harmony with the evidence. *Whittlesey v. Miller,* 572 S.W.2d 665 (Tex.1978). We find that jury's answers to the damage issues are supported by legally and factually suffi-

cient evidence. We also find no showing that passion, prejudice, or some other improper motivation controlled the jury's award of damages in response to the special issues and did not result in an excessive verdict. Appellants' points of error numbers eight, nine and ten are overruled.

Appellee Lena Johns is the mother of the decedent James F. Beasley. Mrs. Johns did not testify at the trial because of her advanced age and ill health. However, Margaret Beasley testified that Mrs. Johns enjoyed a good relationship with the decedent, had loved her son very much and depended on him. The decedent visited his mother frequently and if she needed anything, she always called him since he was her closest child. She would visit at the Beasley home and the loss of decedent was a shock and a grief to her.

▬▬▬ In an action by a parent for the death of an adult child, a mother can recover the pecuniary benefits that the deceased adult child would have contributed to her support, had he lived. Pecuniary benefits encompass those benefits that can be reasonably estimated in money, such as labor, services, advice, and counsel and attention in ministering to the wants and needs of parents. *General Motors Corp. v. Grizzle,* 642 S.W.2d 837 (Tex.App.—Waco 1982, writ dism'd). The damages are not susceptible of exact proof and the amount is left largely to the sound discretion and common sense of the jury. The appellate court will not disturb the jury's finding where it is the result of an honest endeavor to ascertain the damage sustained in the light of the attendant facts and conditions. *General Motors Corp. v. Grizzle, supra.* Appellant's point of error number eleven is overruled.

Appellant's point of error twelve complains of the trial court's action in overruling their motion for new trial because of jury misconduct. The alleged misconduct was that certain members of the jury saw appellant Scroggins run a red light outside the courthouse during a trial recess and discussed this incident during jury deliberations. Ten jurors were called as witnesses

and testified. Juror Hobbs testified that he saw Mr. Scroggins run the red light, but remembered no one commenting on it and affirmatively stated that the incident had no effect on the verdict that he returned. Juror Barkley heard casual mention of the incident but no mention of it during jury deliberations. Juror Jerke saw the incident and casually mentioned it to another juror after the jury had reached its verdict. Jerke specifically denied that the incident entered into the jury deliberations. Seven other jurors either did not hear or recall hearing any mention of Scroggins running the red light during jury deliberations.

A movant for new trial based on jury misconduct must establish the following: (1) that misconduct occurred; (2) that it was material misconduct; and (3) that based on the record as a whole, the misconduct probably resulted in harm to the movant. The question of whether jury misconduct occurred is a question of fact to be determined by the trial judge. *Flores v. Dosher*, 622 S.W.2d 573 (Tex.1981); *TEX. R.CIV.P. 327.* The finding of the trial court that no jury misconduct occurred is binding on the reviewing courts and will be reversed only where a clear abuse of discretion is shown. *Barrington v. Duncan*, 140 Tex. 510, 169 S.W.2d 462 (1943). We find no such abuse of discretion. Appellant's point of error number twelve is overruled.

Appellees by crosspoints appeal the trial court's denial of mental anguish damages. *TEX.R.CIV.P. 301.* The question before us is whether the trial court erred in granting appellants' motion to disregard the jurys' answers to special issues nos. 16, 18, and 20 and thus failing to include in the judgment the jurys' award of damages for mental anguish. Appellants contend that to extend recovery for mental anguish in this case would allow a double recovery for the emotional losses sustained by Mrs. Beasley and that the other appellees cannot recover for mental anguish because the decedent was not a "minor".

In *Sanchez v. Schindler*, 651 S.W.2d 249 (Tex.1983) our Supreme Court held that a plaintiff may recover under the wrongful death statute for loss of companionship, society and mental anguish for the death of his or her minor child. The Supreme Court noted that "injuries to the familiar relationship are significant injuries and are worthy of compensation." 651 S.W.2d at 252. We note that our Supreme Court has recently extended this holding to allow the same recovery for wrongful death of a parent. *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549, 28 Tex.Sup.Ct.J. 466 (June 8, 1985). We agree with the Supreme Court that "[t]here is no logical reason to treat an injury to the familial relationship resulting from the wrongful death of any family member enumerated in *TEX.REV. CIV.STAT.ANN. art. 4675* (Vernon 1952) differently than an injury to such relationship resulting from the wrongful death of a child." *Cavnar, supra.* As to the contention that recovery for mental anguish in this case would allow a double recovery for the loss of consortium sustained by Mrs. Beasley, we note that in their objections to the court's charge, appellants failed to make any objection to Special Issue No. 16 that the submission of the mental anguish issue for Mrs. Beasley would be duplicitous and would constitute a double recovery. Accordingly, this complaint is waived. *TEX.R.CIV.P. 274; Brazos Elec. Power Co-Op. v. Taylor*, 576 S.W.2d 117 (Tex.Civ. App.—Waco 1978, writ ref'd n.r.e.).

To sustain the action of the trial court in granting a motion to disregard the jury's answers to special issues, it must be determined that there is no evidence upon which the jury could have made the findings relied on. In acting on the motion, all testimony must be considered in a light favorable to the parties against whom the motion is sought and every reasonable inference deductible from the evidence is to be indulged in that party's favor. *Douglass v. Panama, Inc.*, 504 S.W.2d 776 (Tex. 1974); *Campbell v. Northwestern Nat. Life Ins. Co.*, 573 S.W.2d 496 (Tex.1978). The record shows that Mrs. Beasley became "very hysterical" at her husband's funeral. After her husband's death, Mrs.

Beasley became very sick and almost died. Mrs. Johns, the decedent's mother suffered shock and grief because of her son's death. Terry Beasley testified that his father's death was a shock and that he felt "sort of numb." Terry related that he felt that he would never get over that shock because "the longer he [his father] was dead, the more it hit me." The other Beasley children testified as to their shock and grief over their father's death.

▮ Under the Texas Wrongful Death Act, there is no requirement that the plaintiff be within the zone of danger or have witnessed the accident in order to recover for mental anguish. *Sanchez v. Schindler, supra.* This court in *Baptist Hospital of Southeast Texas v. Baber,* 672 S.W.2d 296 (Tex.App.—Beaumont 1984, writ granted) has held that *Sanchez, supra,* has authorized recovery for mental anguish without proof of physical injury or conduct worse than negligence.

▮ We do not believe that proof of physical injury or even proof of physical manifestation should be a necessary predicate for the recovery of mental anguish in a wrongful death action. The focus should be on compensating the bereaved for their harrowing experience resulting from the untimely, preventable and otherwise unnecessary death of one whom they have shared a special emotional relationship. *Sanchez, supra.* (On Rehearing, Ray J. Concurring) Human experience teaches us that death of a loved one is a most traumatic event in a person's life. It is common knowledge that the sudden and unexpected death of a loved one evokes mental anguish in persons of ordinary sensibilities. In such a case, a jury may infer the existence of mental suffering from the particular circumstances even in the absence of direct proof. *Western Union Tel. Co. v. Adams,* 75 Tex. 531, 12 S.W. 857, 859 (1889). It is well settled in Texas that the jury has the power to consider as proven any matter that is of common knowledge in the community. *Missouri Pacific Railroad Co. v. Kimbrell,* 160 Tex. 542, 334 S.W.2d 283 (1960).

▮ There is sufficient evidence to support the jury's findings with respect to the mental anguish issues. Appellees' cross points of error one through three are sustained.

Accordingly, we reinstate the jury's award of damages for mental anguish. The judgment of the trial court is reformed to include the jury's award as follows: The sum of $125,000 in favor of Margaret Frances Beasley; the sum of $10,000 in favor of Terry Ashley Beasley; the sum of $10,000 in favor of Nancy Baugh Powell; the sum of $10,000 in favor of William L. Beasley; the sum of $10,000 in favor of James M. Beasley; the sum of $10,000 in favor of Lena Johns in addition to the other damages awarded by the jury. As reformed, the judgment is affirmed.

AFFIRMED AS REFORMED.