CITY OF DALLAS, et al., Appellants,

v.

Robert L. MASSINGILL, et al., Appellees.

No. 05–86–00393–CV.

Court of Appeals of Texas, Dallas.

May 14, 1987.

Rehearing Denied June 16, 1987.

Analeslie Muncy, Gary Keane, DFW Airport, for appellants.

Timothy E. Kelley, Dallas, for appellees.

Before WHITHAM, STEWART and McCRAW, JJ.

McCRAW, Justice.

Robert L. Massingill filed a class action suit on behalf of the members of the Dallas police and fire departments against the City of Dallas, the City Manager, the Fire Chief, and the Police Chief (the City). Massingill asserts that the City has not provided class members with the number of vacation days required by Texas Revised Civil Statutes article 1269p, section 3. In a bench trial with stipulated facts, the court found that the City had failed to meet the statutorily mandated vacation requirements for policemen and firemen. The class members were to be awarded damages equal to a full day's wages for each vacation day they were denied.

The City appeals by three points of error in which it asserts that the trial court erred: (1) in holding that the City of Dallas' "Kelly Days" and personal holidays are not article 1269p, section 3 vacation days; (2) in holding that article 1269p, section 3 entitles members of the class to fifteen days of vacation during their first year of employment; and (3) in determining potential damages to class members without crediting Kelly days and personal holidays as vacation days. By one crosspoint, Massingill alleges that the trial court erred in holding that the average work week of fire fighters is fifty-six hours rather than fifty-four hours. We affirm the trial court's judgment in part and reverse in part.

According to the stipulated facts, the personnel rules provide that each member of the Dallas police and fire departments is entitled to six officially designated holidays. Additionally, members also receive two personal holidays annually, to be taken the first and second halves of the year. These two personal holidays fulfill the City of Dallas regulations requiring uniformed fire department employees to receive eight holidays per year. Fire fighters who have a twenty-four hour work day are also given one paid day off every twelve weeks. These are called Kelly days.

■ In its points of error one and three, the City asserts that Kelly days and personal holidays are vacation days within the meaning of article 1269p, section 3, which provides:

> Each member of [the fire department and police department] in any city of more than thirty thousand (30,000) inhabitants shall be allowed fifteen (15) days vacation in each year with pay; provided that [this section] shall not be applied ... unless such member shall have been regularly employed in such department or departments for a period of at least one (1) year.

The City claims that it should receive credit for Kelly days and personal holidays when damages are calculated. We disagree.

The term "vacation" and "holiday" are not defined under article 1269p. The court in *Coffman v. City of Wichita Falls*, 374 S.W.2d 798, 799 (Tex.Civ.App.1964, writ ref'd) defines "vacation" as an implied "recess or leave of absence, a respite from active duty; an intermission or rest period during which activity or work is suspended." The Dallas personnel rules do not specifically define "vacation", but it does define official holidays and separately sets out the guidelines for personal holidays:

### HOLIDAYS

3.61(a) The following official holidays will be observed:

NEW YEAR'S DAY (January 1)

MEMORIAL DAY (Last Monday in May)

INDEPENDENCE DAY (July 4)

LABOR DAY (First Monday in September)

THANKSGIVING DAY (Fourth Thursday in November)

CHRISTMAS DAY (December 25)

3.61(b) Effective January 1, 1976, any person employed on the first working day of the month of January will, in addition to each official holiday, be enti-

tled to an additional holiday of individual choice [personal holiday] which must be taken during the months January through June.

3.61(c) Effective July 1, 1976, any person employed on the first working day of the month of July will, in addition to each official holiday, be entitled to an additional holiday of individual choice which must be taken during the months July through ·December.

Dallas' personnel rules and article 1269p both differentiate between the two types of non-work days by categorization and caption.

The stipulated evidence clearly demonstrates that Kelly days and personal holidays are subject to limitations and restrictions which are not imposed upon vacation days by the City of Dallas Personnel Rules: (1) Vacation days may accumulate over a two year period; Kelly days and personal holidays cannot be accumulated; (2) upon resignation or termination of employment a member is paid a lump sum for accrued vacation leave not taken and a deceased member's estate is paid a lump sum for accrued vacation; there is no lump sum payment for Kelly days or personal holidays; (3) vacation days, once vested do not lapse; Kelly days are given every twelve weeks and if not taken, lapse; personal holidays must be taken during a six month period, and if not taken, lapse; (4) vacation days are given to all members of the fire and police departments; Kelly days are only given to firemen who work twenty-four hour shifts; (5) members can earn additional vacation time under incentive programs; Kelly Days are given every twelve weeks and cannot be increased; the member is only allowed two personal holidays and there is no incentive program to earn additional holidays.

Noting these patent differences, we hold that the trial court properly found that Kelly days and personal holidays are not equivalent to article 1269p vacation days. There is sufficient evidence of probative force to support this factual determination. *See Pool v. Ford Motor Co.,* 715 S.W.2d 629, 633, 635 (Tex.1986). The City's points of error one and three are overruled.

■ In their second point of error, the City complains that the trial court erred in holding that members of the class are entitled to fifteen days of vacation during their first year of employment because article 1269p, section 3 is not applicable during that time period. We agree. The statute declares that members *shall be allowed* fifteen days of vacation; provided that the provisions *shall not be applied* to any member unless he has been regularly employed for one year. TEX.REV.CIV.STAT. ANN. art. 1269p, § 3 (Vernon Supp.1986). We hold that the trial court improperly determined that the members are entitled to fifteen days of vacation during their first year of employment. However, we note section 3a of article 1269p states:

*Number of vacation days and holidays*

Firemen and Policemen shall have the same number of vacation days and the same number of holidays, or days in lieu thereof, that is granted to other municipal employees.

TEX.REV.CIV.STAT.ANN. art. 1269p, § 3a (Vernon Supp.1986). We, therefore, reverse that portion of the trial court's judgment awarding members fifteen vacation days in their first year of employment, and remand to the trial court to determine the correct number of vacation days due to members in accordance with section 3a of the statute.

■ By crosspoint, Massingill asserts that the trial court erred in holding that the average work week of fire fighters is fifty-six hours rather than fifty-four hours. The stipulated facts discuss Kelly days and their effect on the number of hours in the average work week:

Originally, Kelly days were given so that firefighters' average work week would not exceed fifty-four (54) hours per week, per year. It was believed at the time to be necessary in order to comply with the Federal Fair Labor Standards Act (FLSA). The United States Supreme Court has since held that FLSA is not applicable to City firefighters. The Fire

Department need only comply with the State's standard of sixty hours per week. Nevertheless, Kelly days have continued to be given up through now, even though there is no statutory or legal reason for doing so.

The Chief of the fire department distributed a notice to all members of the fire department on March 26, 1975, which stated:

Effective April 1, 1975, the average work week for members assigned to the Fire Control & Rescue Operations Bureau will be reduced to fifty-four (54) hours per week. This reduction in average hours on duty per week will be accomplished by granting each member an additional twenty-four hours of leave each twelve (12) weeks. The additional 24 hours leave shall be known as "KELLY DAY." The following objective criterions and guidelines are provided for the information and guidance of all concerned.

OBJECTIVE: To provided a reduction in the number of hours on-duty in an average work week from 56 to 54 for personnel in the Fire Control & Rescue Operations Bureau.

The evidence demonstrates that the firefighters work twelve hour shifts and have twenty-four hours off. This averages out to be a fifty-six hour work week; however, the firefighters still receive the Kelly days every twelve weeks, thereby reducing their weekly hours.

Massingill is challenging the great weight and preponderance of the evidence. *See Pool,* 715 S.W.2d at 633. In reviewing the factual sufficiency or great weight and preponderance of the evidence, the appellate court must examine the entire record to determine whether the evidence supporting the finding is so weak, or the evidence to the contrary is so overwhelming, that the findings should be set aside. *P.T. & E. Co. v. Beasley,* 698 S.W.2d 190, 193 (Tex. App—Beaumont 1985, writ ref'd n.r.e.); *see Jauregui v. Jones,* 695 S.W.2d 258, 262 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.). We hold that the court's finding that firemen work fifty-six hour weeks is so against the great weight and preponder-

ance of the evidence that it is manifestly unjust. Massingill's crosspoint is sustained.

We affirm the portion of the trial court's judgment finding that Kelly days and personal holidays are not equivalent to vacation days; we reverse the portion of the judgment finding that members are entitled to fifteen vacation days in their first year of employment and remand for the trial court to determine the proper number of vacation days due to those members in accordance with article 1269p, section 3a. Further, we reverse the trial court's finding that firefighters work a fifty-six hour week and remand for review in light of this opinion.

McCRAW, J., dissents.

McCRAW, Justice, dissenting.

I write the opinion for the majority of this Court predicated upon the assigned errors presented. I am of the opinion, however, that the trial court's judgment is only interlocutory and that any appeal therefrom is premature.

The questioned judgment, after stating numerous fact findings, recites:

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that the Plaintiffs, Robert Massingill and Ray Reed, and the members of the above-described Class, recover of and from the City of Dallas, Defendant, the sums of money owed each member of the Class, all as prescribed herein, with interest thereon at the legal rate of ten percent (10%) from date of judgment. In the event this judgment is appealed by the Defendants, damages against Defendant City of Dallas shall be calculated during the pendency of the appeal using the guidelines set forth herein above.

Notice of this Final Judgment shall be given to all members of the above-described Class by means of notification of each member of the Class who is presently employed either in the Fire Department or the Police Department, by placing written notice in the pay envelope of such persons, and notifying all other members of the Class who are not pres-

ently employees of either the Fire Department or the Police Department by means of sending such written notice to that person's last known address.

Plaintiffs' attorneys' application for attorneys' fees having been previously passed upon and approved by this Court, and having been found to be reasonable, is hereby again approved and the Plaintiffs' attorneys are awarded 25% of the damages to be paid hereunder as reasonable attorneys' fees. Plaintiffs' attorneys are further awarded all reasonable expenses which they have incurred in the prosecution of this case, including but not limited to court costs. Said attorneys' fees and expenses shall be deducted from the total amount of damages before the individual damage amounts are paid to the class members.

All costs are taxed against the Defendant City of Dallas, and all other relief not expressly granted herein is denied.

This judgment fails to state a single monetary damage award, or a formula for damage calculation, and it allows ongoing damages to accrue during the pendency of this appeal. Additionally, appellees' attorneys are awarded unspecified "reasonable expenses which they have incurred in the prosecution of this case, including but not limited to court costs."

It has long been the rule in Texas "that an appeal may be prosecuted only from a final judgment and that to be final a judgment must dispose of all the issues and parties in a case." *North East Independent School District v. Aldridge*, 400 S.W.2d 893, 895 (Tex.1966); *Bokemeyer v. Bokemeyer Properties, Inc.*, 601 S.W.2d 217 (Tex.Civ.App.—Beaumont 1980, writ dism'd). Texas authority is clear on the judicial definition of final judgment:

A final judgment is one which awards the judicial consequences which the law attaches to the facts and determines the controversies between the parties over the subject matter. It terminates the litigation of the parties on the merits of the case *so that nothing remains to be done but to execute it according to its terms.* However, if the rights contro-

verted by the parties be settled by the judgment, it will be held final, although further proceedings should be required *to carry the judgment into full effect.* Such proceedings may be expressly provided for in the face of the judgment without affecting its finality, *provided they are merely incidental to its proper execution.*

*Hargrove v. Insurance Investment Corp.*, 142 Tex. 111, 117, 176 S.W.2d 744, 747 (1944) (emphasis added) (citations omitted); *see Hinde v. Hinde*, 701 S.W.2d 637, 639 (Tex.1985); *Baker v. Hansen*, 679 S.W.2d 480, 481 (Tex.1984). The monetary amount of the judgment must be determinable by a ministerial act or the judgment lacks definiteness and is not final. *See State v. Producers Utilities Corp.*, 602 S.W.2d 367, 369 (Tex.Civ.App.—Amarillo 1980, no writ). A judgment with an unascertainable amount cannot be final. *Jones v. Liberty Mutual Insurance Co.*, 733 S.W.2d 240 (Tex.App.—El Paso, 1987) (not yet reported).

The judgment is clearly not final. It will require more than mere incidental proceedings or a ministerial act to carry it to execution. The City confesses in its brief that it is seeking advisory assistance from this Court—that time-consuming future trial court action will be required to settle and determine the entire controversy:

It should also be pointed out that there are thousands of members of the Appellee class. Each individual class member's entitlement to damages must be calculated.... If any one of Appellant's points of error or Appellee's crosspoints of error or Appellee's crosspoint of error is granted and the District Court's Final Judgment accordingly modified in any respect, any calculation of individual damages done up to that point would have to be completely redone.

This Court should not give advisory opinions. Although it may prove inconvenient to the parties to construct a final judgment in this case, appeal is improper until this is accomplished.

Applying the *Hargrove* standard to this decree, I would hold that the judgment

fails to determine the controversies so that "nothing remains to be done but to execute it according to its terms." *Hargrove,* 176 S.W.2d at 747. I would hold the judgment to be interlocutory and pursuant to rule 58(b) of the Texas Rules of Appellate Procedure, would abate the appeal and remand the case to the trial court to enter a final judgment.